# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-KA-00498-COA

| | |
|---|---|
| **CLIFTON FORBES AND NICKOLAS ROMOND HENDERSON** | **APPELLANTS** |
| **v.** | |
| **STATE OF MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 02/05/1998 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GEORGE T. HOLMES; JOHN COLETTE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL JEFFREY KLINGFUSS; WAYNE SNUGGS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | FORBES: ARMED ROBBERY: SENTENCED TO SERVE A TERM OF 15 YEARS IN THE MDOC. HENDERSON: (1) ARMED ROBBERY; SENTENCED TO SERVE A TERM OF 35 YEARS IN THE CUSTODY OF THE MDOC; THIS CAUSE TO RUN CONCURRENT WITH COUNTS 2 & 3; (2) AGGRAVATED ASSAULT; SENTENCED TO SERVE A TERM OF 20 YEARS IN THE MDOC; THIS TO RUN CONSECUTIVE TO COUNT 3 BUT CONCURRENT WITH COUNT I.; (3) AGGRAVATED ASSAULT; SENTENCED TO SERVE A TERM OF 20 YEARS IN THE MDOC; THIS CAUSE TO RUN CONSECUTIVE TO COUNT 2 AND CONCURRENT WITH COUNT I |
| DISPOSITION: | AFFIRMED - 06/27/2000 |
| MOTION FOR REHEARING FILED: | 7/5/2000; denied 9/5/2000 |
| CERTIORARI FILED: | 9/11/2000; denied 11/22/2000 |
| MANDATE ISSUED: | 12/13/2000 |

BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.

SOUTHWICK, P.J., FOR THE COURT:

¶1. Clifton Forbes and Nickolas Romond Henderson were tried together for robbery and the shooting of two people. Forbes was found guilty of armed robbery but not guilty of aggravated assault, while Henderson was convicted both of armed robbery and two counts of aggravated assault. Both appeal and

raise a variety of issues, but we find none of them meritorious. We affirm.

## FACTS

¶2. Forbes and Henderson tell different tales. Undenied is that on December 19, 1996, about 7 p.m., Tiney's Package Store on Clinton Blvd. in Jackson, Mississippi was robbed. The store's two employees, James C. Harris and William J. Hannis, were shot. Harris was at the counter, and Hannis was in the back room when three young black males entered the store. Harris asked the teenagers to show some identification, and one of them pointed a gun at his face and declared that "this" was his ID. When Harris tried to knock the gunman's hand away from his face, he was shot in the stomach. Hannis came from the back of the store and pulled a gun from under the counter, shooting at the robbers, who then ran out of the store. Before leaving, however, one of them shot Hannis in the shoulder. In the course of the robbery, one of the assailants dropped an electronic pager on the floor. Harris retrieved the pager and gave it to police, who traced its ownership to Nickolas Henderson.

¶3. At trial, Henderson testified that the pager had been stolen earlier in the day when the other codefendants Forbes and Cormel Morgan visited his house. He denied being present at the liquor store robbery. That he was at home all evening was supported by testimony from his grandmother and from his uncle. Nickolas Henderson said that his girlfriend reported the pager stolen after he asked her if she had it. A witness from the pager company testified that someone had reported that the pager had been stolen. She could not state whether the report was made on the day of the robbery or the next day. The date on the company's records was December 19, the date of the robbery. However, the witness did not know whether this referred to the date that the theft allegedly occurred or the date of the report of the theft.

¶4. Co-indictee Morgan testified that on the day of the robbery he accepted Henderson's telephoned invitation to go to the store. Henderson and Forbes appeared at his home and the three walked towards the liquor store. According to Morgan, Henderson stated that he was "tired of being broke." Morgan said that he needed money too. Morgan testified that as they neared the package store, Henderson suggested robbing it. Morgan said that Forbes did not participate in the discussion but only followed the other two. Henderson gave Morgan a .380 semi-automatic pistol. Morgan said that he was the robber who held the gun on Harris, but that his gun did not fire when Harris slapped it away. Instead, he said that Henderson fired, wounding both Harris and Hannis.

¶5. Several months after the robbery, the victim Harris received a letter from Forbes. Forbes named Henderson as the shooter and stated that he did not want to join in the robbery, that peer pressure forced him and that he ran away as soon as he heard shots. Harris could not identify Forbes but testified that his height was consistent with the taller individual who was a bystander.

¶6. At trial, Forbes testified that when he heard Henderson and Morgan talking about robbing the liquor store, he did not think they were serious; such conversations had taken place before. He said that he followed them as they entered the store, that he was in the doorway of the liquor store when the shooting started, and then he ran. In a statement to a Jackson police detective, Forbes said he saw Henderson drop the pager while pulling a pistol from his waistband during the robbery.

## DISCUSSION

### I. Ineffective Assistance of Counsel

¶7. Henderson argues that his counsel was ineffective and as a result he was deprived of a fair trial. An appellate court's review of such an allegation requires determining whether counsel's performance was deficient and whether that deficiency prejudiced Henderson's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoted in *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)).

¶8. Henderson asserts that his trial attorney failed to respond appropriately to the introduction of various kinds of evidence that allegedly were so prejudicial that failure to object reveals inadequacy of representation. We discuss each evidentiary matter separately.

> (1) Henderson first argues that trial counsel should have objected to Forbes's letter to a victim that contained the statement that Henderson was present at the robbery. It could well be that Henderson's attorney saw little practical benefit to be gained by attempting to prevent the admission of this letter or to make the distinction that it was admissible only against Forbes. It would be before the jury as to Forbes. If found to be a statement by a co-conspirator, it would be admissible also against Henderson. M.R.E. 803(d)(2). Counsel might have considered objecting to the letter would gain little for his client and would bring increased attention to the letter. Later Forbes testified in his own behalf consistently with the contents of the letter, and no hearsay objection would block the jury's consideration of that testimony. Thus no improper prejudice from the letter's implied references to Henderson arose.

> (2) Similarly, inferences by the prosecution that Henderson was the shooter arose from the letter and were supported also by Forbes's testimony.

> (3) Detailed descriptions of the victims' wounds were given, but objections to the facts of the crime are of limited success. Even if some additional limits on the details might have been obtainable, we see no harmful prejudice to Henderson.

> (4) Co-defendant Morgan is said to have made only a tentative identification of Henderson, but trial counsel allowed the State to have it reflected on the record as a positive identification. Appellate counsel is being disingenuous. Morgan knew Henderson from their common neighborhood and was sure of his identity. When he said "I guess" in response to the State's question as to whether a particular defendant was Henderson, the statement was that Henderson was the "one with the plaid Hilfiger I guess." The speculation could only be whether the shirt was a "plaid Hilfiger."

> (5) Appellate counsel argues that an objection should have been made to Morgan being asked by the State whether he knew the punishment for perjury. Counsel must weigh the benefits to be gained by such an objection; there is no obvious gain here. To the extent the argument is that the State was

bolstering Morgan's testimony by revealing that it was made in full knowledge of the penalty for perjury, we do not find it to be so.

(6) An officer quoted Forbes as telling law enforcement officials that Henderson dropped his pager in the liquor store during the robbery. Henderson on appeal states that a hearsay objection should have been made. However, a statement by a defendant is admissible in his own trial unless proven to be a violation of his rights against self-incrimination. Further, a statement by a co-conspirator in furtherance of the conspiracy is admissible. M.R.E. 803 (d)(2).

(7) The court sustained an objection to Henderson's testifying about Forbes doing "a lot of stealing and stuff around our neighborhood," and no protest arose from trial counsel. We will discuss the issue in a later section of the opinion addressing specific trial court errors.

(8) & (9) Henderson argues that the prosecution "badgered" Henderson and other defense witnesses and trial counsel did not object. We find aggressive cross-examination, but would not categorize any of it as badgering.

(10) The State is also said to have been allowed to "ridicule" defense tactics. Neither Forbes nor Henderson's attorneys objected to the argument. No specific comment by the State is mentioned. We have read the closing argument and find no demeaning comments about performance of counsel.

¶9. More generally, Henderson argues that his trial counsel "stood up very few times to object to the State's actions or argue Mr. Henderson's cause before the court." He cites a case in which the supreme court reversed and remanded for new trial on the basis of ineffective assistance of counsel. *Moody v. State*, 644 So. 2d 451, 454 (Miss. 1994). Moody cited twenty-one instances of error by his trial counsel that indicated a lack of participation by counsel in the trial. The same cannot be said here. Henderson's counsel participated in the trial and filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial, after his client was convicted.

¶10. Henderson points out that his counsel failed to cross-examine two of the State's witnesses, Officer James Norwood and Officer Willie Mack. Norwood received the pager from Harris at the scene of the robbery, and Mack took Forbes's statement following his arrest. Subjects that Henderson suggests his trial counsel could have brought up through cross-examination include the presence or absence of his fingerprints on the pager or at the scene and the presence and resting place of any bullets or shell casings at the scene. Henderson admits that the decision not to cross-examine the two officers might have been a tactical one by his attorney. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Manning v. State*, 726 So. 2d 1152, 1169 (Miss. 1998) (quoting *Strickland v. Washington*, 466 U.S. at 689). We find no basis to second-guess the decisions attacked here.

¶11. In addition, Henderson states that his counsel failed to file motions for directed verdict, mistrial or dismissal, thus failing to preserve many issues for appeal. However, the trial record shows that Henderson's counsel did file a post-trial motion for judgment notwithstanding the verdict or for a new trial, preserving the relevant issues.

¶12. Under the two-pronged test of *Strickland*, even if Henderson's trial counsel's performance can be faulted, a claim of ineffective assistance of counsel must fail without a showing of result-changing prejudice.

Only where there is a reasonable probability that without counsel's errors the outcome of the trial would have been different will the appeals court find ineffective representation. *O'Halloran v. State*, 731 So. 2d 565, 569 (Miss. 1999).

¶13. We will address the weight and sufficiency of the evidence against Henderson later. That review will reveal, though, that it is difficult to envision how even an error-free performance by trial counsel would have produced a different result at this trial.

## II. Prosecutorial Misconduct

¶14. Forbes and Henderson each allege different instances of prosecutorial misconduct.

¶15. First, Forbes argues that the trial court allowed the prosecution to secure commitments from potential jurors during *voir dire* that they would not consider Forbes's age at the time of the crime when they were deliberating. The complained-of exchange went as follows:

> BY MR. DELAUGHTER: Okay. I believe you can see from observing the two defendants here, and you're going to find out from the testimony, that they are young. They were in their late teens at the time this happened, 17, 18 years of age, in that area. Are there any of you that you just don't feel like you could be a part -- even if the proof established it, even if the State met its burden of proving these defendants guilty, are there any of you that just because of their age, because of their youth, you just don't think it would be something you could personally do to find someone of that age guilty of such a serious crime? Do any of you feel that way?

> (NEGATIVE RESPONSE BY JURORS.)

> BY MR. DELAUGHTER: Okay. So do all of you assure the Court, then, that the age or youthfulness of the defendants would not have a part in your determination of whether they did the act or not? Does everybody assure the Court of that?

> BY MR. HOLMES: Your Honor, we're going to object to that question. It invades the province of the jury. They can consider whatever they deem appropriate.

> BY MR. DELAUGHTER: Your Honor, the Court knows that age is not an element in this case. It's not even a factor in mitigation.

> BY MR. HOLMES: Judge, it may go to the intent or willfulness or duress or whatever. That's for the jury to determine.

> BY THE COURT: Well, I think if counsel would just rephrase it.

> BY MR. DELAUGHTER: (Continuing) The Court, do you understand, will give you written jury instructions at the end of the case that tells you what the law is, okay. And for instance, it will say to be guilty of armed robbery the State has to prove these things, and it will set out what the State has to prove, okay. All right. Now, what I'm asking you is will you go by what the Court has and that list of instructions and not something that's not part of a crime such as a person's age? Will you follow the law and do that?

> BY MR. HOLMES: Same objection, your Honor.

BY THE COURT: Overruled.

BY MR. DELAUGHTER: (Continuing) Will all of you do that?

(AFFIRMATIVE RESPONSE BY JURORS)

¶16. Forbes argues that this tactic violated the Uniform Rules of Circuit and County Court Practice, one of which provides that "[n]o hypothetical questions requiring any juror to pledge a particular verdict will be asked." URCCC 3.05. Cited to us is a death penalty appeal in which the defense had sought a commitment from jurors on *voir dire* that they could return the death penalty even if the evidence revealed the convicted person did not himself pull the trigger. *Stringer v. State*, 500 So. 2d 928, 938 (Miss. 1986). The jurors were reminded of their commitment at the *penalty phase* of the bifurcated trial with the following:

> Each one of you said under oath -- I can vote for the death penalty in the proper case. Will it matter that he's young? Will he have to have killed more than one person? Will he have to have pulled the trigger himself on this murder? Can you still do it? Can you do it based on the testimony of the two people that you convicted him on? And every single one of you said yes -- on your oath -- I can do that.

*Stringer*, 500 So. 2d at 938. These comments were improper because they sought to limit jurors even before the first piece of evidence had been presented. The supreme court saw this as a demand before trial that evidence favorable to the defendant be ignored, and a reminder at closing argument of their prior implicit commitment. The effect "is to shame or coerce the jury into rejecting factors which would tend to mitigate against the death penalty." *Id.* at 938-39.

¶17. It is instructive that these comments by themselves did not require reversal, but the cumulative effect of various errors was to deny the defendant a fair trial at the penalty phase. *Id.*

¶18. The prosecutor in the present case sought to highlight for the jurors the proper and the improper considerations for determining guilt and innocence. Among the improper factors is to refuse to find guilt despite being convinced beyond a reasonable doubt, because of a juror's sympathy for a teenage defendant. In *Stringer*, however, the age of the defendant was a proper consideration not to determine guilt but at the penalty phase. The *Stringer* court said that the prosecutor encouraged jurors during *voir dire* not to acquit just because the defendant may not have actually pulled the trigger propelling the fatal bullet. At the penalty stage the State argued well beyond that point. The supreme court held that the prosecutor misrepresented the jurors' earlier commitment in an attempt to shame them into keeping a bargain they had never made. *Id.* at 938. Nothing similar occurred here.

¶19. The supreme court recently held that it was not error for the prosecution to ask the jury if they would be "unduly influenced" by the defendant's age during sentencing. *Lester v. State*, 692 So. 2d 755, 771 (Miss. 1997). In the present case, the State did not secure a commitment from the jury that they would return a certain verdict given a certain set of facts. Instead, the prosecution asked if they could put aside a defendant's age in determining his guilt. Since age is not an element of the crime and is not a mitigating factor, we hold that this is not error.

¶20. Next, Forbes asserts that he is entitled to a new trial because of improper closing arguments by the State. The first assignment of error in closing arguments is based on the following statement:

BY MR. DELAUGHTER: . . . they [Harris and Hannis] just happened to be the two poor souls that were in there at the time. The point is it could have been anybody in there. It could have been my grandfather. It could have been your uncle, your father --

BY MR. HOLMES: Objection. That's the golden rule argument.

BY THE COURT: Sustained. Disregard the last statement.

BY MR. HOLMES: Motion for mistrial.

BY THE COURT: Overruled.

¶21. The test for determining whether an improper argument by a prosecutor to a jury requires reversal is "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Davis v. State*, 660 So. 2d 1228, 1248 (Miss. 1995). Traditionally, attorneys are given wide latitude in closing arguments. *Ahmad v. State*, 603 So. 2d 843, 847 (Miss. 1992). Any allegedly improper prosecutorial remark must be evaluated taking into consideration the circumstances of the case when determining the comment's propriety. *Id.* at 846.

¶22. Forbes asserts that this comment by the prosecution falls into the category of a prohibited "golden rule" argument. *Chisolm v. State*, 529 So. 2d 635, 639 (Miss. 1998). This type of argument asks the jurors to put themselves in the place of one of the parties or victims. *Id.* at 640. The most helpful precedent involved a rape. *Alexander v. State*, 520 So. 2d 127, 130-31 (Miss. 1988). The prosecution's "golden rule" argument was that female jurors should place themselves in the victim's position. *Id.* The court held that because the trial court sustained the defense's objection and admonished the jury to disregard the remark, the possible prejudice was averted. *Id*. Similarly, the trial court in the present case sustained the objection to the "golden rule" argument and instructed the jury to disregard it. Therefore, the error was overcome.

¶23. The second assignment of error in closing occurred when the State argued the following:

BY MR. DELAUGHTER: . . . The verdict you render concerning punishment, the verdict you return is going to be reflective of the conscience of this community. Your verdict, the punishment that you impose, or that you refuse or decline to impose is going to be reflective of what we as a society value; that is, social tranquility and protection of the innocent. Will your verdict indicate such an intolerance to this type of armed robbery that it --

BY MR. HOLMES: Your Honor, we're going to object. That's an improper argument, that the jury is an extension of law enforcement in some way, or encouraging --

BY MR. DELAUGHTER: I didn't say that.

BY MR. HOLMES: Encouraging improper motive for the jury. We object.

BY THE COURT: Overruled.

BY MR. DELAUGHTER: Will your verdict indicate such an intolerance for this kind of armed robbery as opposed to the numerous kinds where someone just walks in a store, gets the money and

leaves. Where two elderly men are shot, and the intent was to shoot them down from the doorway, will your verdict reflect the intolerance of imposing the maximum or will you pass the buck for someone else to decide? Only the jury can return a life sentence in an armed robbery case. The judge can't do it. So if any of you --

BY MR.HOLMES: We're going to object. That's improper.

BY MR. DELAUGHTER: That's exactly --

BY THE COURT: Overruled.

¶24. This argument, characterized by Forbes as a "send a message" argument, requires closer scrutiny.

¶25. The supreme court has condemned any prosecution suggestion that the jurors "send a message" with a verdict. This leads the jurors away from their mission, which is to determine the guilt or innocence of a specific person. Instead jurors are encouraged to act on motivations that transcend the facts of the case:

> The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.

*Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988).

¶26. Fine distinctions could and occasionally are made as to such arguments. One similar remark was found to have been proper -- "You know, we have got to let people know what the people of Harrison County stand for" -- but that decision was recently overruled. *Carleton v. State*, 425 So. 2d 1036, 1039 (Miss. 1983), overruled in *Payton v. State*, 96-CT-00949-SCT (Miss. Aug.26, 1999) (motion for rehearing pending). In another case the prosecutor told the jurors that they were the final link in the chain of law enforcement. *Fulgham v. State*, 386 So. 2d 1099, 1101 (Miss. 1980). The court found error but without more it would not require reversal. *Id.*

¶27. Rather than strain at distinctions, we hold that it is error to urge jurors to consider that "the verdict you return is going to be reflective of the conscience of this community." As in *Williams*, it asks that jurors keep in mind that their verdict will speak to community values. The choice that the State offered to jurors here was "social tranquility and protection of the innocent" as well as "intolerance to this type of armed robbery," or on the other hand "pass[ing] the buck for someone else to decide." The proper choice is in fact between requiring evidence beyond a reasonable doubt and settling for less.

¶28. Yet also as in almost all such cases, the argument was not by itself so egregious as to prevent the jurors from reaching an appropriate verdict. Few have been the circumstances in which this argument has constituted reversible error. *Payton*, 96-CT-00949-SCT at (¶4). Those circumstances are absent here.

### III. 'Wrongful Acts' Testimony

¶29. Forbes argues that the trial court should have granted a mistrial and a severance when Henderson testified that Forbes had committed other bad acts. Henderson argues that the court should have allowed the remarks to be made before the jury so he could show the true character of the witness. Testimony to which Forbes's counsel objected included a statement that Clifton Forbes "used to do a lot of stealing and stuff around our neighborhood," that Forbes "and the guy up the street from me, they had a conflict," and that Forbes "had got the guy's rims off his car."

¶30. That either accused was generally an unpleasant and dishonest fellow would not have been relevant even if the defendant wishing to make the point about the other was being tried separately. To the extent bad acts by a co-indictee might have been relevant to prove something such as motive, knowledge, or identity, then an evidentiary conflict between the defendants might have arisen. M.R.E. 404(b). Here though, Henderson wanted to show that Forbes was a thief -- that was generally inadmissible even had Henderson been tried alone. Neither do we find any interference with valid impeachment of a co-defendant witness is shown by the allegations of error.

¶31. After the first comment, the trial court sustained the objection and denied Forbes's motion for mistrial, instructing the jury to disregard the comment. After the third comment, Forbes's counsel again moved for a mistrial. The court denied the motion but again instructed the jury to disregard. Forbes's attorney moved for a mistrial and severance of Forbes's case. Hearing the motion outside the presence of the jury, the court stated: "The Court believes that a statement was made, but that the statement made can be corrected or cured by a strong instruction to the jury at this time when they come back. And so under the circumstances the Court is going to overrule the motion for mistrial." When the jury returned, the court instructed them that Henderson's remarks about Forbes were "unfounded and not relevant," urging that they "totally disregard" those answers.

¶32. Forbes argues on appeal that this evidence of thefts and other wrongs could not be cured by an instruction. "Evidence of past crimes not resulting in conviction is generally inadmissible, and a 'mistrial in such case is proper unless it can be said with confidence that the inflammatory material had no harmful effect on the jury.'" *Sanders v. State*, 586 So. 2d 792, 797 (Miss. 1991)(citations omitted). In context, we cannot find this evidence of past petty thefts to qualify as inflammatory. When the trial court sustains the objection to improper testimony and instructs the jury to disregard the troublesome remarks, "it is presumed that jurors follow the instructions of the court so as to dissipate any prejudice." *Crenshaw v. State*, 520 So. 2d 131, 134 (Miss. 1998).

¶33. The supreme court has acknowledged that a prosecution witness's statement that she was familiar with the defendant's criminal record was improper and inadmissible. *Reynolds v. State*, 585 So. 2d 753, 754-55 (Miss. 1991) (citing M.R.E. 404(b)); *see also* URCCC 3.12. A mistrial is required only when the harm of the inadmissable matter cannot be removed by an admonition or jury instructions. *Reynolds*, 585 So. 2d at 755.

¶34. In this case, although the comments on Forbes's character were not admissible under the authority cited above, the damaging effect was removed by the court's instructions and requests for assurance from the jurors that they would disregard Henderson's statements. We find no error.

¶35. It is also argued that Forbes was entitled to have his trial severed from that of Henderson because of Henderson's testimony. A severance is required when one co-defendant seeks to exculpate himself at the expense of the other, and when the evidence at trial disproportionately is relevant to the guilt of only one of

the defendants. *Payton*, 96-CT-00949-SCT at (¶2). We find no great imbalance to the evidence. Furthermore, though each co-defendant spoke less than respectfully of the other, neither made an effort significantly to shift the blame while exonerating himself. A severance was not required.

### IV. Withheld Evidence

¶36. In Henderson's denied motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, he alleged that the State had withheld evidence in the form of the testimony of a witness named Aaron Lamar Allen. In a statement to police which Forbes at trial repudiated as a fabrication, Forbes stated that there were four robbers in the liquor store. The State subpoenaed Allen, a friend of Forbes's, but did not call him to testify at trial. Allen had signed a written statement for police that Forbes had told him about the liquor store robbery. This statement corroborated the details of the robbery to which Forbes testified at trial.

¶37. Without securing affidavits, Henderson, in the motion for new trial and on appeal, states that Allen made admissions to other witnesses while they were all in the witness room during trial. Allen allegedly admitted that on the night of the robbery, he was extremely drunk and was shot in the leg. He thought he might have been one of the robbers but had no memory of that night. Henderson alleges that by not calling Allen to testify, the State withheld evidence of a possible fourth robber.

¶38. One of the hurdles for our review is that we may "not rely solely on assertions made in the briefs; it is the appellant's duty to establish any facts necessary to establish his claim of error." *Goss v. State*, 730 So. 2d 568, 571 (Miss. 1998). In light of the identification of Henderson as one of the liquor store robbers and as the likely shooter by both Forbes and Cormel Morgan, it is difficult to see how Allen's testimony would have made a difference in the trial's result. The State was not required to offer the testimony of a witness who, by his own admission, was too drunk on the day of the robbery to know if he was involved or not. We find no error here.

### V. Weight and Sufficiency, Cumulative Error

¶39. Next, we address Forbes's and Henderson's challenges to the weight and sufficiency of the evidence presented at trial against them. Where the legal sufficiency of the evidence is challenged on appeal, we must, with respect to each element of the offense, consider all of the evidence in the light most favorable to the State. *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985). We may reverse only where with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Id*.

¶40. Matters regarding the weight and credibility of that evidence are to be resolved by the jury. *Id.* The appellate court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983).

¶41. First, we will briefly review the evidence presented at trial against Henderson. Although the victims, Harris and Hannis, were unable to identify Henderson to a certainty, Cormel Morgan and Clifton Forbes both testified that Henderson was among the robbers. Morgan testified that the robbery was Henderson's idea, and that Henderson handed him a gun. Forbes identified Henderson as the shooter of both Harris and Hannis. Henderson's pager was found at the scene of the robbery. We hold that this evidence was more

than sufficient to justify turning over the determination of Henderson's guilt or innocence to the jury.

¶42. In his brief, Henderson asserts that the only witnesses at trial were "liars and snitches," and thus their testimony had little weight. Although Morgan and Forbes admittedly were accomplices, the testimony of accomplices is sufficient to sustain a verdict where there is slight corroborative evidence. *Finley v. State*, 725 So. 2d 226, 236 (Miss. 1998). Even when not corroborated, the accomplice's testimony may be sufficient. *Holly v. State*, 671 So. 2d 32, 40 (Miss. 1996). The pager found at the crime scene was more than "slight" corroborative evidence. In spite of Henderson's story that Forbes had stolen his pager earlier in the day, its physical presence at the scene combined with Forbes's testimony that he saw Henderson drop it during the robbery properly could convince fair-minded jurors of his guilt.

¶43. Further, the credibility of witnesses and the weight and worth to be afforded their testimony is for the jury to decide. *Givens v. State*, 618 So. 2d 1313, 1320 (Miss. 1993). It was for the jury to weigh the testimony of Morgan, Forbes, and Henderson's alibi witnesses, his grandmother and uncle. They decided to believe Morgan and Forbes.

¶44. As to the sufficiency of evidence to convict Forbes, he testified that he thought Morgan and Henderson were joking as they made plans for the robbery on the way to the store. He relies upon *Pryor v. State*, 239 So. 2d 911 (Miss. 1970). In that case, the appellant waited in the car while his two friends went inside a store and robbed it. Pryor and both of his co-indictees testified that he took no part in the robbery and knew nothing about it until they were arrested. *Id*. at 912. The court found that no "word, act or deed . . . shown by the testimony" connected Pryor with the commission of the crime; thus, there was insufficient evidence to justify a conviction. *Id*. Here, though, Forbes did not linger outside. He was alongside the others as the robbery occurred.

¶45. Forbes's involvement could be seen as less central than the role of Henderson and Morgan. Forbes contends that in fact his only connection with the crime was as a bystander. What evidence exists can, for analytical purposes, be grouped into two categories: one being prior knowledge that the crime would be committed and the second being Forbes's presence as the crime unfolded.

¶46. *Prior knowledge of the crime:*

(1) Officer Mack testified that Forbes admitted hearing Morgan and Henderson discussing the robbery plan on the way to the store, knew that they had guns, but that Forbes insisted that he thought that robbery was not really planned and the others were only joking.

(2) While in jail, Forbes wrote a letter to the victim Harris saying that he was influenced by "peer pressure" to go along during the robbery. His letter indicated that he had tried to dissuade the others from committing the crime.

(3) Cormel Morgan, codefendant, testified that Forbes did not participate in the conversations concerning the robbery.

¶47. *Forbes's presence at the scene:*

(1) Officer Mack testified that Forbes told the officer that he was present, standing in the doorway during the robbery.

(2) Forbes testified that he was present at the scene and saw Henderson's pager drop to the floor when Henderson pulled his gun from his pants, and that he saw the shootings.

(3) Forbes's letter to the victim Harris indicated that he was present, that he was the "one that was at the door."

(4) The other victim, Hannis, testified that the teenager who appears to have been Forbes did not stay the entire time at the door but entered the liquor store and was next to a refrigerator with the door behind him. When Harris was shot, Hannis indicated that the other two were standing beside the shooter. Forbes's attorney asked whether "the other two individuals were really behind the fellow with the gun," but Hannis responded that "[t]hey wasn't behind, they was on the side of him. . . . They was on the side looking each way and trying to find out something, I guess."

(5) Victim Harris testified that Forbes's height was consistent of the individual at the door during the robbery.

(6) Co-indictee Cormel Morgan testified that Forbes was at the scene but did not participate in the planning nor in the actual robbery.

¶48. The all but unrebutted evidence was that Forbes was present, did not say anything and displayed no weapon. Mr. Hannis testified that when his co-clerk Mr. Harris was shot, both of the other teenagers were standing beside him "looking each way." The question is whether Forbes's participation in the crime and not just observation of it is a permissible inference from the evidence.

¶49. Forbes's letter to the victim that was introduced into evidence indicated that Forbes did not *want* to participate in the robbery, "but you and I both know how peer pressure is." The jurors reasonably could infer that he was admitting to joining in the robbery despite his reluctance. Though Forbes testified that he believed that Morgan and Henderson were joking, it is doubtful that Forbes in this letter was referring to peer pressure to participate in a joking conversation about a robbery. Mr. Hannis revealed that the two people who did not display a gun were alongside the shooter "looking each way" as the demand for money was made. Forbes was one of those two.

¶50. The reasonable inferences to draw from the evidence are largely for the jury. We do not find the inference unreasonable that Forbes, even if reluctant and even if not involved in the planning, was a participant in the robbery, assisting or encouraging its commission by his presence. He walked into the store with the others. There was testimony that the store clerks found his actions to be indistinguishable from those of Morgan. The jury could conclude that Forbes was aware that a robbery with at least one weapon would be attempted and that he stood with the other two while it occurred either as a show of force, as a lookout, or for some other reason. For three people to be responsible for a robbery does not require that they jointly prepare a detailed master plan with assigned roles for each person. There was evidence that he did not withdraw from the acts of the others, but went along with them even to the extent of being alongside the shooter when the store clerk was shot. This is not a case in which the only reasonable conclusion is that Forbes was simply aware that his two friends would attempt a robbery.

¶51. Finally, Henderson argues that the cumulative impact of errors at trial violated his right to a fair trial under the Eighth and Fourteenth Amendment. In his brief, he argues that several "near-errors" can accumulate to render a trial unfair and cites *Stringer v. State*, 500 So. 2d 928, 946 (Miss. 1986). In that

death penalty case, the supreme court held that no reversible error was committed during the trial on Stringer's guilt, but it recited a long list of "near-errors" that kept him from receiving a fair sentencing hearing. The court affirmed as to guilt but remanded for a new sentencing hearing. The two situations are dissimilar: first in that this is not a death penalty case, second in that we are considering guilt and not sentencing, and third in that we have found no error among either appellant's numerous assignments of error. Therefore, we affirm.

¶52. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF CLIFTON FORBES OF ARMED ROBBERY AND SENTENCE OF 15 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.**

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF NICKOLAS ROMOND HENDERSON OF ARMED ROBBERY, AND SENTENCE OF 35 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE CONVICTION OF NICKOLAS ROMOND HENDERSON OF TWO COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF 20 YEARS FOR EACH COUNT, TO RUN CONSECUTIVELY TO EACH OTHER BUT CONCURRENTLY WITH THE SENTENCE FOR ARMED ROBBERY, IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO HINDS COUNTY.**

    **McMILLIN, C.J., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.**

    **IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J.**

    IRVING, J., CONCURRING IN PART, DISSENTING IN PART:

¶53. Both Forbes and Henderson were convicted of the crimes charged in this case. Because I find the evidence insufficient to sustain Forbes's conviction, I must respectfully dissent from the majority's affirmance of his conviction. I do, however, find the evidence more than sufficient to support Henderson's conviction. Accordingly, I join the majority opinion as to Henderson.

¶54. Other than a letter written by Forbes, a teenager without a criminal record, to one of the victims, there is no evidence which arguably could be said to support Forbes's conviction. The letter was introduced into evidence at trial. Portions of the letter were read to the jury at trial. What follows is that portion of the letter adduced through victim, James Harris.

    Q. Let me ask you this. I'm going to hand you this envelope here and the contents. Do you recognize that?

    A. (Examining document). Yes, I do.

    Q. What is that?

    A. This is a letter that I got, and I see his name up here now, Clifton Forbes, from Hinds County Detention Center. He wrote me this letter.

¶55. The prosecutor then read portions of the letter and asked Mr. Harris if what was being read correctly

followed the text of the letter. This is what the prosecutor read:

> Before we came in there we started outside. I heard a voice tell me talk to them boys, tell them don't go in there shooting from the door. Because their intention was to come and shoot y'all from the door. I just couldn't see that happening over some paper with a dead president on it. It just isn't worth it. You see, I didn't even want to participate in it, but you and I both know how peer pressure is.

On the second page of the letter, Forbes wrote, "They wanted me to go in the cash register, but the good Lord didn't want me to." Forbes also said in the letter to Harris that Forbes did not want to participate in it, "but [Harris] and [he] both know how peer pressure is."

¶56. At trial, Harris was asked if he could describe either of the three individuals who came in the store. He said that he thought he could possibly identify the one with the gun. He was less sure of his ability to recognize the others. Forbes's counsel asked Forbes to stand up. After viewing Forbes standing up during the trial, Harris was of the opinion that Forbes's height appeared consistent with the height of the individual who stood near the door as a bystander.

¶57. Hannis, the other victim, testified that when Harris was shot, the three individuals were standing together. Hannis further testified that neither of the three left the store until after Hannis had fired his gun. Hannis placed Forbes at the side of the individual with the gun but testified that he did not see Forbes do anything.

¶58. According to Morgan's testimony, Morgan and Henderson were the ones who had the guns, and Henderson was the one who did the shooting. Morgan testified that he pointed a gun at Harris but that Harris slapped the gun away, and that was when Henderson shot Harris.

¶59. Officer Mack testified concerning a statement Forbes gave to him the day after the robbery attempt. According to Mack, Forbes stated that he saw Henderson drop the pager while in the liquor store. Mack also testified that Forbes said that Morgan and Henderson had already been talking about it (presumably the robbery of the liquor store) but Forbes thought Henderson and Morgan were just joking when they said, "Let's go hit the liquor store."

¶60. The only evidence implicating Forbes is his prior knowledge that the crime would be committed, his presence at the scene of the crime and his letter to Harris wherein he said that Morgan and Henderson wanted him to get the money out of the cash register but, "The good Lord did not want [him] to do so." The question then is whether this evidence is sufficient to support Forbes's conviction. I think not. It is not enough that he was present with prior knowledge that a crime was going to be committed.

¶61. The majority apparently finds that Hannis's testimony -- that the other two individuals (presumably one of them being Forbes) "wasn't behind [the shooter], they was on the side of him. . . . They was on the side looking each way and trying to find out something I guess" -- is indicative of Forbes's participation in the crime and that the jury was entitled to draw such an inference. I agree it is the prerogative of the jury to weigh the evidence and judge the credibility of the witnesses. However, when this testimony is considered in the totality of the evidence, it is readily apparent that Hannis was simply mistaken in his observation. Three individuals: Harris, one of the victims, Cormel Morgan, one of the defendants who pled guilty to the crimes charged, and Forbes each testified that Forbes was standing near the door and did not participate in the crime. The accuracy of these witnesses' testimony is buttressed by the fact that Morgan, by his own

admission, was not simply standing beside Henderson looking around. Morgan, according to his testimony, placed the gun on one of the victims, and when the victim slapped the gun away, Henderson shot the victim. But acceptance of Hannis's testimony as accurate, as the jury was entitled to do, does not prove participation on Forbes's part. Forbes never attempted to do anything. For example he did not attempt to reach for the money when the cash register was opened. No money was taken. He said nothing to either of the victims. It cannot be legitimately argued that Forbes was serving as a lookout from within the store, so what was he doing other than observing? How can it be said that he was there with the intention of aiding either Henderson or Morgan when nothing was done consistent with such an intention and no intervening force prevented him from taking such action if that was his avowed intention?

¶62. One who is present at the scene of a crime with the avowed intention to aid is a participant. Also, one who, though not present, gives counsel regarding a crime, is an accessory before the fact and just as guilty as the principal. *Harper v. State,* 83 Miss. 402, 415, 35 So. 572, 573 (1904). In *Harper*, the appellant, Harper, along with one R.T. McCormick, was charged with the murder of one William B. Lawrence. Harper had allegedly said to some women that he was going to arrest or have the deceased arrested. He also had said that he would "get McCormick." Harper was at the scene of the crime when McCormick shot and killed Lawrence. The *Harper* court found that the jury was erroneously instructed because it was allowed to find Harper guilty of murder by aiding and abetting McCormick even if McCormick had not actually violated the law. The court also found it was error to instruct the jury that it could find Harper guilty if the jury found that Harper aided or abetted or encouraged the murder by word or act or deed or in any other way. The court went on to explain:

> Some degree of participation in the criminal act must be shown in order to establish any criminal liability. Proof that one has stood by at the commission of a crime without taking any steps to prevent it does not alone indicate such participation or combination in the wrong done as to show criminal liability, although he approves of the act. *Even the fact of previous knowledge that a felony was intended will not render one who has concealed such knowledge and is present at the commission of the offense a party thereto.* (emphasis added).

*Harper*, 83 Miss. at 415, 35 So. at 573.

¶63. My view of the record compels me to the conclusion that the most the State proved against Forbes is that he had prior knowledge that a robbery would be attempted, did nothing to stop it from being committed and was at the scene in a non-participatory role when the crimes were committed. The most that can be said about Forbes's statement in the letter that he did not want to participate is that he did not want to go with the other two defendants to the liquor store but succumbed to peer pressure and went anyway. This of course was poor judgment. However, exercising poor judgment by succumbing to peer pressure and going to the scene of a crime are not in my judgment the same as succumbing to peer pressure and participating. I fear many an otherwise law-abiding teenager finds himself succumbing to peer pressures on a daily basis and making choices reflective of poor judgment, but I do not believe their actions should be criminalized without clear and sufficient evidence that such is the case. I do not find any evidence of participation on Forbes's part other than showing up, and I believe under the authority of *Harper* this is not enough. Accordingly, I dissent from that portion of the majority opinion affirming his conviction and sentence.

**KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**