792 So.2d 1000 (2001)
Timothy GARDNER a/k/a Timothy L. Gardner, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01759-COA.
Court of Appeals of Mississippi.
February 20, 2001.
Rehearing Denied May 22, 2001.
Certiorari Denied August 30, 2001.
*1002 David Clay Vanderburg, David L. Walker, Southaven, for Appellant.
Office of the Attorney General by Jean Smith Vaughan, for Appellee.
Before SOUTHWICK, P.J., LEE, and THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Timothy Gardner was convicted of the sale of cocaine, a schedule II controlled substance, in Tallahatchie County. On appeal, he asserts the following errors:
I. WHETHER THE LOWER COURT ERRED IN OVERRULING GARNER'S MOTION FOR A MISTRIAL MADE DURING THE STATE'S CLOSING ARGUMENT.
II. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT GARDNER'S MOTION FOR A MISTRIAL DURING THE TESTIMONY OF STATE'S WITNESS AGENT BISHOP.
III. WHETHER GARDNER'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AND WHETHER THE LOWER COURT ERRED IN REFUSING TO PERMIT GARDNER NEW COUNSEL.
IV. WHETHER THE VERDICT OF THE LOWER COURT WAS MADE AGAINST THE OVERWHELMING WEIGHT OR SUFFICIENCY OF THE EVIDENCE.

*1003 FACTS
¶ 2. On August 21, 1998, Timothy Gardner was arrested for the sale of crack cocaine in Charleston, Mississippi. Gardner sold the controlled substance to Misty Ford, a confidential informant working for the State. Ford was wired with a transmitter, which recorded an audio record of the sale. The State also recorded the sale by a video camera installed in the vehicle Ford drove to the sale location. The State also photographed several shots of a hand to hand exchange made between Gardner and Ford. The sale was also witnessed by Chris Bishop, Lee Burkett and William Brewer, Sheriff of Tallahatchie County.
¶ 3. Bishop, an agent of the Mississippi Bureau of Narcotics, testified that he clearly witnessed Gardner execute the sale in question. Bishop further testified that he had purchased cocaine from Gardner on several occasions of undercover police investigation work during the four month period in which the Mississippi Bureau of Narcotics worked with Sheriff Brewer in building a case against Gardner. Bishop identified Ford as the second party involved in the recorded sale in question.
¶ 4. Ford testified that she was a former cocaine user. She further stated that she had been incarcerated for prescription forgery before working as a confidential informant. Ford identified Gardner as the man selling her the cocaine in the video, on the audiotape and in the photographs.
¶ 5. The video and photographs show the following events take place. Ford asked Gardner for "a twenty." Gardner pulled out a clear plastic bag filled with crack cocaine, removed a rock and handed it to Ford. Ford pulled a previously marked hundred dollar bill from her back pocket and gave it to Gardner. Ford then returned to the truck. During a post-buy meeting with Agent Burkett, Ford turned the crack rock in and initialed the bag in which it was deposited.
¶ 6. The State had the rock tested by the Mississippi Crime Laboratory in Batesville. J.C. Smiley, who was accepted as an expert in forensic chemistry, testified that the rock had been tested at the Lab. Smiley further stated that the rock was 0.42 grams of crack cocaine.
¶ 7. Gardner was the sole witness for the defense. He testified that he was not the person engaged in the sale of cocaine shown in the video or the photographs. However, Gardner admits that Ford approached his residence in the beginning of the video. When asked about the uncanny resemblance between himself and the man recorded in the State's evidence, Gardner claimed that there were many people in Charleston who shared his physical appearance and characteristics.
¶ 8. Gardner was found guilty of the sale of cocaine and sentenced to fifteen years in the Mississippi Department of Corrections with a post-release supervision of five years.

ANALYSIS

I. WHETHER THE LOWER COURT ERRED IN OVERRULING GARDNER'S MOTION FOR A MISTRIAL MADE DURING THE STATE'S CLOSING ARGUMENT.

II. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT GARDNER'S MOTION FOR A MISTRIAL DURING THE TESTIMONY OF STATE'S WITNESS AGENT BISHOP.

STANDARD OF REVIEW
¶ 9. The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's *1004 case. URCCC § 5.15. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Bass v. State, 597 So.2d 182, 191 (Miss.1992). The trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark by either the prosecutor or a witness. Perkins v. State, 600 So.2d 938, 940 (Miss.1992). Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." Hoops v. State, 681 So.2d 521, 528 (Miss. 1996); Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990). The jury is presumed to have followed the admonition of the trial judge to disregard the remark. Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989). See also Lester v. State, 767 So.2d 219, 222-23 (Miss.Ct.App.2000). "It is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result." Estes v. State, 533 So.2d 437, 439 (Miss.1988). See also Perkins, 600 So.2d at 940.

A. BISHOP'S TESTIMONY
¶ 10. During the direct examination of the State's first witness, Agent Bishop, the following statements were made:
Q. Okay, and who did that truck come back registered and belonged to?
A. Mr. Gardner's grandfather.
Mr. Vanderburg: Objection to hearsay.
The Court: I'll sustain the objection.
Q. The truck, who is it registered to?
A. Mr. Gardner's grandfather.
Mr. Vanderburg: Objection, I ask for a mistrial. You sustained my objection.
The Court: I sustained the objection.
Mr. Murphey: I'm sorry.
The Court: Ladies and gentlemen, please disregard the last statement by the witness. And, sir, if I've got an objection, if you keep on testifying I can't deal with the objection. When there's an objection please stop. I'll sustain the objection. The motion for mistrial will be overruled. Ladies and gentlemen, please disregard the last statement from the witness regarding any alleged ownership of the vehicle. That's hearsay. I ask you to disregard it.
¶ 11. During the direct examination of Gardner, the sole witness for the defense, the following statements were made:
Q. Back in August of 1998, did you own that Dodge truck?
A. Well, I was a co-signer. My grandfather owned it.
Q. Your grandfather owned it. And what's his name?
A. Mr. Richard L. Gardner.
Q. He owned the truck but you were a co-signer, is that correct?
A. Yes, sir.
Q. And it was a Dodge truck?
A. Yes, sir.
Q. Did you drive the truck?
A. Yes, sir, I did.
¶ 12. Under the circumstances in this instant case, no serious or irreparable damage resulted from Bishop's remarks. The trial judge directed the jury to ignore the inappropriate response. Moreover, ownership of the truck had little, if anything, to do with the central issue of the case, that is, the sale of cocaine itself. Furthermore, as may readily be seen by Gardner's own testimony, this matter ultimately was brought to the jury's attention by Gardner himself.

*1005 B. THE CLOSING ARGUMENT
¶ 13. In the course of the closing statements made by the State prosecutor, he made the following statement: "Think about it. Take control of the situation. Take your town back." At this point the defense made an objection. The trial judge sustained the objection and made the following order: "The jury will disregard the last comment by the prosecutor. Ladies and gentlemen, you've got to make your decision from the evidence and the law and that alone." During a recess which immediately followed the closing statements, Gardner made a motion for a mistrial based on the "take your town back" comment made by the State.
¶ 14. The test for determining whether an improper argument by a prosecutor to a jury requires reversal is "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." Davis v. State, 660 So.2d 1228, 1248 (Miss.1995). "Traditionally, attorneys are given wide latitude in closing arguments." Davis, 660 So.2d at 1248 (citing Ahmad v. State, 603 So.2d 843, 847 (Miss.1992)). See also Neal v. State, 451 So.2d 743 (Miss.1984). "Any allegedly improper prosecutorial remark must be evaluated taking into consideration the circumstances of the case when determining the comment's propriety." Forbes v. State, 771 So.2d 942, at 950 (Miss.Ct.App.2000).
¶ 15. In discussing the purpose and limits of closing arguments, the following is stated in 23A C.J.S. Criminal Law, § 1090 (1961):
Generally, improper remarks or argument to jury should scrupulously be avoided by all attorneys. The rule that it is always the duty of the prosecuting attorney to treat accused in a fair and impartial manner applies to his conduct and arguments to the jury, and the rights of the accused cannot be prejudiced by improper remarks. It is sometimes difficult, however, to draw the line between allowable argument and improper statements in argument, because the prosecuting attorney and also the counsel for accused, has of necessity much latitude in the language or manner of presenting his side of the case consistent with the facts in evidence.
The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless. There are, however, certain well-established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts.
See also Bullock v. State, 391 So.2d 601 (Miss.1980).
¶ 16. In the case of Bridgeforth v. State, 498 So.2d 796 (Miss.1986), the Mississippi Supreme Court held that the objection to the closing argument during which the prosecution referred to the defendant as "scum" should have been sustained because this amounted to personal abuse and vilification and was inflammatory. Bridgeforth, 498 So.2d at 801. In Payton v. *1006 State, the Mississippi Supreme Court condemned the "send a message" statements made in closing arguments. Payton v. State, 785 So.2d 267 (Miss.1999). In Williams v. State the Mississippi Supreme Court stated that: "jurors are representatives of the community in one sense, but they are not to vote in a representative capacity." Williams v. State, 522 So.2d 201, 209 (Miss.1988). In Forbes v. State, the Mississippi Court of Appeals clarified the issue in holding that: "it is error to urge jurors to consider that the verdict you return is going to be reflective of the conscience of this community." Forbes, 771 So.2d at 951. However, the Forbes court continued to hold that: "as in almost all such cases, the argument was not by itself so egregious as to prevent the jurors from reaching an appropriate verdict. Few have been the circumstances in which this argument has constituted reversible error." Forbes, at 951.. We find the district attorney's comments in the case at hand do not require reversal.

III. WHETHER GARDNER'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AND WHETHER THE LOWER COURT ERRED IN REFUSING TO PERMIT GARDNER NEW COUNSEL.
¶ 17. Gardner's claim is addressed under a two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). A successful completion of this test is paramount to Gardner's argument. He must successfully meet both prongs. Under Strickland and Stringer, Gardner must show that the counsel's performance was so deficient that it constituted prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Stringer, 454 So.2d at 476. The asserting party must also show that "but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985).
¶ 18. Additionally, there is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott v. State, 742 So.2d 1190 (¶ 14) (Miss.Ct.App.1999); Cole v. State, 666 So.2d 767, 777 (Miss. 1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). With this in mind, we now turn to Gardner's allegations of ineffectiveness of his counsel.
¶ 19. After the venire panel had been voir dired by the trial court and placed in recess, Gardner, Mr. Vanderburg and the trial judge met in chambers. Gardner expressed that he did not feel that Mr. Vanderburg had spent enough time with him to be able to establish effective assistance of counsel. The trial court denied Gardner's request for new counsel, advising Gardner that Mr. Vanderburg *1007 was sufficient counsel. After a very thorough explanation of the legal implications and dangers of self-representation in which the judge went through the steps set out in Bevill v. State, 556 So.2d 699 (Miss.1990), Gardner insisted on representing himself. At this time Mr. Vanderburg testified that he was well prepared for the case, pointing out that he had reviewed the video with Gardner and made several pre-trial motions in the case. Mr. Vanderburg also supplied the court with an extremely detailed account of the time and effort he spent on the case. The court instructed Mr. Vanderburg to remain as assistance to Gardner as he represented himself. Gardner went on to make an opening statement, question the witnesses and make a closing statement. The record reflects that Mr. Vanderburg questioned one witness, that witness being Gardner, and made objections throughout the trial.
¶ 20. Gardner now asserts that Mr. Vanderburg did not supply him with effective assistance of counsel. Gardner claims that Mr. Vanderburg consulted with Gardner on only one occasion for approximately thirty minutes. Gardner asserts that this was not an adequate amount of time spent between counsel and defendant. Gardner also points out that Mr. Vanderburg only called one witness, Gardner, in establishing his defense. However, Gardner refused Mr. Vanderburg's services and chose to represent himself. To claim ineffective assistance of counsel at this point would only be an admission that Gardner provided himself with a poor defense, which, prior to the trial, the judge exhaustively forewarned Gardner would occur. Outside of questioning Gardner as a witness, the only input Mr. Vanderburg made were the apt objections, two of which are the very foundation of errors Gardner now attempts to assert.
¶ 21. It has been established by the Mississippi Supreme Court that as stand-by counsel, a defense attorney is "without authority, discretion or control and the charge that he rendered constitutionally ineffective assistance is without merit." Estelle v. State, 558 So.2d 843, 847 (Miss.1990). As in Estelle, where the defendant also represented himself and later appealed, asserting ineffective assistance of counsel, Gardner's assertion of error has no merit.
¶ 22. Gardner also complains that the court erred in refusing to permit Gardner new counsel. "The motion of an indigent prisoner requesting the court to dismiss his court-appointed attorney is addressed to the sound discretion of the trial judge." Burnett v. State, 285 So.2d 783, 783 (Miss.1973). Nor is the defendant entitled to a continuance in order to raise funds with which to employ an attorney. Burnett, 285 So.2d at 784. The record clearly shows that the trial judge used adequate discretion in refusing Gardner's request for new counsel.

IV. WAS THE VERDICT OF THE LOWER COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE OR, ALTERNATIVELY, WAS THE EVIDENCE SUFFICIENT TO CONVICT?
¶ 23. The decision to grant or deny a motion for new trial is discretionary with the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In order to preserve the issue for consideration on appeal, the defendant must raise the issue that the verdict was against the overwhelming weight of the evidence as a ground for his motion for new trial. Howard v. State, 507 So.2d 58, 63 (Miss.1987). In Ford v. State, 753 So.2d 489, 490 (Miss. Ct.App.1999), we held that:
[i]n determining whether a jury verdict is against the overwhelming weight of *1008 the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844, 846 (Miss.Ct.App.1999)). See also Herring v. State, 691 So.2d 948, 957 (Miss.1997); Turner v. State, 726 So.2d 117, 125 (Miss. 1998); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Hughes v. State, 724 So.2d 893, 896 (Miss.1998). "In determining whether a jury verdict is against the overwhelming weight of the evidence, the court accepts as true the evidence favorable to the State." Wetz v. State, 503 So.2d 803, 812 (Miss.1987). See also McClain, 625 So.2d at 781; Van Buren v. State, 498 So.2d 1224, 1229 (Miss.1986). It has also been established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell, 506 at 991. See also Hilliard v. State, 749 So.2d 1015, 1017 (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). We hold that the verdict was not against the overwhelming weight of the evidence.
¶ 24. A(1) motion for a directed verdict, (2) request for peremptory instruction, and (3) motion for judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. McClain, 625 at 778. "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court." McClain, 625 at 778. This occurred when the lower court overruled the motion for JNOV. Wetz, 503 at 807-8. "If there is sufficient evidence to support a verdict of guilty, this Court will not reverse." Meshell v. State, 506 So.2d 989, 990 (Miss. 1987). See also Haymond v. State, 478 So.2d 297, 300 (Miss.1985); Fairley v. State, 467 So.2d 894, 902 (Miss.1985). The test to be applied in considering the sufficiency of the proof based on circumstantial evidence is "whether a rational fact finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged." Shields v. State, 702 So.2d 380, 382 (Miss.1997) (citing Deloach v. State, 658 So.2d 875, 876 (Miss.1995)). See also Murphy v. State, 566 So.2d 1201, 1204 (Miss.1990). We hold that the evidence was more than sufficient to support the verdict.
¶ 25. The sale of cocaine made by Gardner to Ford was recorded by audio transmitter, video camera, several photographs and witnessed by three officers of Mississippi law enforcement. The three law enforcement officers and Ford identified of Gardner as being the seller during testimony. The sold substance was tested by Mississippi Crime Laboratory in Batesville, which found that the rock was 0.42 grams of crack cocaine.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS POST-RELEASE SUPERVISION AND FINE OF $5000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO TALLAHATCHIE COUNTY.
*1009 McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur.