910 So.2d 651 (2005)
Johnny Lee HAMPTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02512-COA.
Court of Appeals of Mississippi.
March 8, 2005.
*652 W. Ellis Pittman, attorney for appellee.
Office of the Attorney General by Billy L. Gore, attorney for appellant.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On September 4, 2003, a jury in the Panola County Circuit Court found Johnny Lee Hampton guilty of aggravated assault upon Cheryl Chapman. Hampton was then sentenced to twenty years in the custody of the Mississippi Department of Corrections, with fifteen years to serve and five years suspended. Hampton filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial. The trial court denied his motion. Hampton now appeals to this Court asserting the following issues: (1) the trial court erred in admitting into evidence Chapman's statement that Hampton attempted to rape her during the altercation when that statement was not provided to Hampton prior to trial; (2) the trial court erred in admitting the testimony of *653 Deputy Sheriff Gerald White; (3) the trial court erred in denying his motion for a mistrial during Deputy White's testimony; (4) the trial court erred in allowing evidence of other bad acts, including Hampton's statement to Chapman that he was going to rape her and her five year old daughter; (5) the jury was not properly instructed as to the elements of aggravated assault; (6) the trial court erred in allowing witnesses to testify as to matters not disclosed to him prior to trial; (7) the trial court erred in granting a jury instruction stating that an aggressor is not entitled to self-defense; (8) the trial court erred in admitting hearsay evidence; and (9) the prosecutor made prejudicial remarks about him, rendering the trial fundamentally unfair. Finding no error, we affirm.

FACTS
¶ 2. On July 12, 2002, a dispatcher at the Panola County Sheriff's Department received a call at approximately 11:15 p.m. concerning a disturbance in the Greenbriar Subdivision. The caller, Christy Glover, stated that Hampton was attacking Chapman, his girlfriend. Evidently, Hampton and Chapman began arguing in their mobile home, an argument which quickly escalated to violence. Chapman testified that Hampton began to assault her and chase her through the mobile home. Chapman made it to the yard, after which she felt Hampton grab her from behind and stab her in the back with a knife. At some point, they both struggled to gain control of the knife. Hampton then proceeded to drag Chapman through the yard by her clothing, which was eventually ripped from her body. Hampton also assaulted Chapman with a brick, a 2 × 4, a tire rim, tires, and his hands and fists. There was testimony that Hampton threatened to kill Chapman and anyone else who tried to call the police.
¶ 3. After the fight broke up, Chapman was admitted to the emergency room at the Tri Lakes Medical Facility in Batesville, Mississippi, where she was treated for lacerations of her right upper eyelid and her left eyebrow, both of which required sutures; contusions and abrasions on both sides of her head; scrapes and abrasions of the skin around her neck; scrape wounds on her right arm; wounds on her left breast; a stab wound in the right upper back above the scapula; and abrasions on her lower abdomen and her toes. Chapman also had two lower teeth knocked out.
¶ 4. Hampton testified that Chapman was the initial aggressor and that he did not cause her injuries. Hampton was also treated in the emergency room for lacerations, a human bite which punctured his right thumb, stab wounds, and a strained lower back.

DISCUSSION OF ISSUES
I. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE CHAPMAN'S STATEMENT THAT HAMPTON ATTEMPTED TO RAPE HER DURING THE ALTERCATION WHEN THAT STATEMENT WAS NOT PROVIDED TO HAMPTON PRIOR TO TRIAL?
VI. DID THE TRIAL COURT ERR IN ALLOWING WITNESSES TO TESTIFY AS TO MATTERS NOT DISCLOSED TO HAMPTON PRIOR TO TRIAL?
¶ 5. As Hampton's first and sixth issues discuss discovery violations, we will address them together. The trial court has substantial discretion in dealing with discovery matters. Gray v. State, 799 So.2d 53(¶ 26) (Miss.2001). Hampton's first discovery issue pertains to a statement made by Chapman during her direct *654 testimony. Chapman stated that Hampton said he was going to rape her and then cut her. Hampton objected, arguing that this particular statement was not included in the transcript of Chapman's statement to the police. After considering the matter, the trial court responded that there was no discovery violation as the State had provided Hampton the transcripts of the recorded statement made by Chapman to the police months before the trial commenced. The trial court further stated:
To require the State to furnish a script of a witness' [sic] testimony is incomprehensible. I've never seen it done in this court or any other court. The witness is going to be here for cross-examination. He has the transcription of her recorded statement. I don't know what else the State could have done.
I don't find a discovery violation, Mr. Shah. I've never seen a person get on the stand in any courtroom and testify precisely what was in a recorded statement. She's here for cross-examination. You've had the name and the list of witnesses for ample time for whatever investigation you wanted to conduct. I don't find a discovery violation.
¶ 6. As this matter was clearly within the discretion of the trial court, we agree with the trial court's determination in regards to Chapman's statement.
¶ 7. Concerning his other discovery issue, Hampton states that the trial court allowed each witness of the State to testify to matters that were not contained in their prior statements provided to Hampton during discovery. Hampton states that the particular statements were prejudicial and contrary to the rules of discovery. Although Hampton cites some law pertaining to this issue, he fails to identify either the witnesses or the specific testimony of which he complains. We are disinclined to peruse the record in order to find every instance Hampton objected to testimony by a witness for the State to determine whether their testimony conformed to their prior statements and whether any prejudicial testimony was in fact elicited. We find these issues to be without merit.
II. DID THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF DEPUTY SHERIFF GERALD WHITE?
III. DID THE TRIAL COURT ERR IN DENYING HIS MOTION FOR A MISTRIAL DURING DEPUTY WHITE'S TESTIMONY?
¶ 8. As Hampton's second and third issues concern the testimony of Deputy White, we will discuss them together. Hampton argues that a portion of Deputy White's testimony was not presented to him prior to trial and that the admission of such testimony warranted a mistrial. During White's testimony of his pursuit and arrest of Hampton, Hampton made a general objection and there was a bench conference, which was not recorded. After the objection and conference, the testimony proceeded. At the end of White's testimony and cross-examination by Hampton, Hampton requested another conference with the trial court and, outside the presence of the jury, Hampton objected to White's testimony and asked that a mistrial be granted. Although the trial court found that the State should have given Hampton a copy of White's testimony, the trial court also found that a mistrial was not warranted in that situation. The trial court found as follows:
Mr. White did not testify to anything that happened at the scene, any evidence discovered, any acts of violence by this person, the defendant, to Ms. Chapman or anything else. He only testified that he was en route, he met the vehicle, he recognized the vehicle, he followed the vehicle until it crashed. That testimony *655 of Gerald White in no way takes away from the defendant his right of a self-defense claim; it in no way takes away from the State by excluding this testimony. Aggravated assault had already been committed prior to the time that Gerald White intercepted this vehicle and chased it for some short distance. I don't think it warrants a mistrial.
¶ 9. The authority to declare a mistrial is left largely to the sound discretion of the trial court. Pulphus v. State, 782 So.2d 1220(¶ 10) (Miss.2001). Within this authority is the discretion to determine whether the objectionable comment is so prejudicial that a mistrial should be declared. Edmond v. State, 312 So.2d 702, 706 (Miss.1975). Furthermore, when the trial court instructs the jury, we must assume that the panel followed the instruction. Puckett v. State, 737 So.2d 322(¶ 72) (Miss.1999). In this case the trial court decided to eliminate all of White's testimony since White had only testified as to his pursuit and arrest of Hampton. The trial court admonished the jury to disregard White's testimony, and we find no abuse of discretion in doing so.
IV. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF OTHER BAD ACTS, INCLUDING HAMPTON'S STATEMENT TO CHAPMAN THAT HE WAS GOING TO RAPE HER AND HER FIVE YEAR OLD DAUGHTER?
¶ 10. In his fourth issue, Hampton argues that the trial court erred in allowing evidence of other bad acts, including his statement to Chapman that he was going to rape her and her five year old daughter. Hampton also argues again that he never received this statement by Chapman during discovery; however, we have already found that issue to be without merit. During Chapman's testimony she stated that, during the assault, Hampton said he was going to rape her, cut her, and hurt Chapman's daughter as well. Hampton objected on the discovery grounds first and, second, on the grounds that Hampton was not charged with attempted rape of Chapman or her daughter. The trial court found as follows: "If this is the res gestae, this is the incidents [sic] that happened just minutes of the aggravated assault, it's admissible. He's not been charged with another crime. It's just part of the events that occurred that evening, as I understand the testimony of this witness."
¶ 11. In Neal v. State, 451 So.2d 743, 759 (Miss.1984), the supreme court said that:
Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. Such proof of another crime is also admissible where it is necessary to identify the defendant, where it is material to prove motive, and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.
The court went on to say that evidence of Neal's "crimes against Bobby Neal and Melanie Sue Polk were admissible because they were integrally related in time, place and fact with the murder of Amanda Joy." Id. Neal has been limited, however, by holding that repeated references to other crimes which were not necessary to prove the State's case may be overly prejudicial and result in reversible error. Flowers v. State, 773 So.2d 309, 321 (Miss.2000)(reversing where State tried defendant separately on each of four murder counts and *656 then repeatedly used evidence of all four killings in same trial); see also Todd v. State, 806 So.2d 1086(¶ 23) (Miss.2001). However, in the case at bar, there is no evidence of either prejudice or prosecutorial overreaching. The testimony of Chapman makes it clear that Hampton's statements occurred at the same time as the assault. Hampton's statements and the assault on Chapman were the same transaction.
¶ 12. Hampton also briefly argues that Mississippi Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, we note the exception: evidence of other crimes may be admissible "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Although the trial court was not asked to rule on whether this statement was admissible under Rule 404(b), the trial court recognized that it was relevant because it occurred during the assault. We also find that the statement demonstrated, at the least, intent on Hampton's part to harm Chapman and her daughter.
V. WAS THE JURY PROPERLY INSTRUCTED AS TO THE ELEMENTS OF AGGRAVATED ASSAULT?
¶ 13. In his fifth issue, Hampton argues that the jury was not properly instructed as to the elements of aggravated assault. Jury instruction 9 tracked the language of the indictment but did not include the portion of the indictment alleging that Hampton also battered Chapman. Hampton contends that the trial court erred in refusing the jury instruction containing the battery language. However, according to the record, the State attempted to introduce instruction S-2, which contained the battery charge, but Hampton objected to the granting of this instruction and argued in support of this objection. The trial court declined to adopt S-2, but did adopt S-1, as instruction 9, which stated the elements of aggravated assault. Once instruction 9 was proffered, Hampton made no objection. The failure to make a contemporaneous objection waives the issue for purposes of appeal. Smith v. State, 729 So.2d 1191(¶ 87) (Miss.1998). Thus, we find this issue to be without merit.
VII. DID THE TRIAL COURT ERR IN GRANTING A JURY INSTRUCTION STATING THAT AN AGGRESSOR IS NOT ENTITLED TO THE DEFENSE OF SELF-DEFENSE?
¶ 14. In his seventh issue, Hampton argues that the State failed to offer a proper and clear self-defense jury instruction. Our supreme court has consistently held that "when determining whether error lies in the granting or refusal of various instructions, we must consider all the instructions given as a whole." Simmons v. State, 805 So.2d 452, 476(¶ 37) (Miss.2001). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id.
¶ 15. The State's self-defense instruction, S-3, stated the following:
The Court instructs the jury that the law in Mississippi declares that an aggressor is not entitled to assert the defense of self-defense. This means that if you find from the evidence in this case beyond a reasonable doubt that JOHNNY LEE HAMPTON was the initial aggressor in this series of events, then JOHNNY LEE HAMPTON may not claim that he acted in self-defense.
After offering this instruction, Hampton objected, citing his proposed self-defense instruction, D-1, as follows:

*657 The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the Defendant acts.
¶ 16. The trial court not only decided to grant the State's self-defense instruction as jury instruction 10, but also granted Hampton's self-defense instruction as jury instruction 11. The trial court stated, "I'm going to grant that instruction [S-3]. I still think the jury has got to determine if that instruction is available to the defendant. It's certainly a question of fact here. It's disputed before the jury as to who the initial aggressor was. I'm going to [grant] S-3, No. 10, and I'm going to also grant D-1 which will be 11."
¶ 17. Hampton objected to the State's self-defense instruction and the trial court responded by granting the State's instruction as well as Hampton's self-defense instruction. Hampton offered no further objection and we find that Hampton's objection was cured by granting his self-defense instruction. This issue is without merit.
VIII. DID THE TRIAL COURT ERR IN ADMITTING HEARSAY EVIDENCE?
¶ 18. In his eighth issue, Hampton argues that Ruby T. Milam's statements concerning what she heard Hampton say during the assault were hearsay and should not have been allowed into evidence. At one point during her direct testimony, Milam testified that Hampton picked Chapman up by her neck and stated, to the onlookers, including Milam, "Y'all look, look at this naked bitch." Hampton did not make a contemporaneous objection to Milam's statement. In fact, on cross-examination, Hampton mentioned the statement twice while questioning Milam. As Hampton failed to make a contemporaneous objection, we find this error was not properly preserved for appeal. Caston v. State, 823 So.2d 473 (¶ 102) (Miss.2002).
¶ 19. We do note that Hampton's objection came after Milam's testimony but centered on a prior statement made by Milam to a detective. Hampton's concern with the prior statement was that it did not contain some information that Milam testified to at trial. The prosecution offered into evidence the transcript of Milam's interview with the detective, but Hampton objected. Hampton objected to the transcript being offered into evidence only after he had attempted to impeach Milam with it on cross. Ultimately, the trial court edited the transcript of Milam's interview in order to delete portions which Hampton criticized before entering the transcript into evidence. Curiously, the transcript of Milam's interview was not included in the record.
IX. DID THE PROSECUTOR MAKE PREJUDICIAL REMARKS ABOUT HAMPTON?
¶ 20. In his last issue on appeal, Hampton argues that the prosecutor made an inappropriate comment, which was prejudicial and warranted a new trial. While questioning Hampton, the prosecutor, while trying to elicit testimony concerning the assault, asked, "But Johnny Boy didn't do this?" Hampton objected, stating that the comment was improper. Hampton stated that his name was "Johnny Hampton" not "Johnny *658 Boy." In response, the trial court stated, "Just disregard that. Johnny Lee Hampton, I believe, is his proper name." We do not find that the prosecutor's reference to Hampton as "Johnny Boy" is so prejudicial as to require a new trial. We find that the trial court properly informed the jury to disregard that remark. This issue is without merit.
¶ 21. THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.