# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01384-COA

**QUINCY FOX A/K/A QUINCY MONTRAY FOX**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2013 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ONE COUNT OF ARMED CARJACKING, TWO COUNTS OF KIDNAPPING, AND ONE COUNT OF ARMED ROBBERY, AND SENTENCED, AS A HABITUAL OFFENDER, TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, ON EACH COUNT, WITH ALL LIFE SENTENCES TO RUN CONCURRENTLY TO ONE ANOTHER, BUT CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCES |
| DISPOSITION: | AFFIRMED - 11/04/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ROBERTS AND CARLTON, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.     Following his trial in the Lauderdale County Circuit Court, a jury convicted Quincy

Fox of two counts of kidnapping, one count of armed carjacking, and one count of armed robbery. Fox was sentenced, as an habitual offender, to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for each count, with his sentences to run concurrently to one another. Fox initially filed a motion for a new trial, which the circuit court denied. Fox then filed a notice of appeal. However, over two weeks after filing a notice of appeal, Fox filed a second motion for a new trial with the circuit court. In it, he alleged that there was newly discovered evidence that Jessie Jones, a witness for the State and accomplice to the crimes, received a more lenient sentence than what he testified to at trial. The circuit court denied Fox's second motion for a new trial, and Fox filed the present appeal. He asks this Court to determine whether the circuit court erred in denying his second motion for a new trial and whether the circuit court erred in allowing the State to introduce evidence of Fox's other crimes. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 2, 2012, Fox and his codefendant, Jones, were indicted jointly for the armed carjacking of Robin Rosenbaum, the kidnapping of Rosenbaum and Amanda Davis, and the armed robbery of Davis. Fox and Jones were also individually indicted, in counts five and six, for felon in possession of a firearm.[1] Fox was also indicted as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2007), which made him eligible for a life sentence if he was convicted of any of the charges in his indictment.[2]

_____

[1] While Fox and Jones were co-indictees, only Fox's trial and present appeal are at issue.

[2] Fox had previous convictions in Lauderdale County Circuit Court for armed robbery and simple robbery occurring at different times and involving different victims. He had

Fox elected to go to trial, and his trial was held in the circuit court on May 28-30, 2013. At the beginning of the first day of his trial, the State moved for a nolle prosequi on the count of felon in possession of a firearm, and the circuit court entered an order granting the motion. Also on the same day, the circuit court entered an agreed order granting Fox's motion in limine to exclude any reference, in the jury's presence, to Fox's prior convictions or pending felony charges.

¶3.     The State called Davis to testify first. According to her testimony, she and Rosenbaum were nurses who were teaching a class for the Rush Hospital Education Department on the night of January 10, 2012. As they were leaving the facility after 11 p.m., they stood near Rosenbaum's vehicle talking. Davis testified "[t]he next thing that happened was somebody came behind me, and there was a gun in . . . [Rosenbaum's] face." Davis explained that there were two men, one taller than the other, wearing blue jeans and hoodies, with the taller one holding the gun. Davis never saw any of the men's facial features besides their eyes, because the hoodies covered their faces. Davis and Rosenbaum gave the men their purses and keys, because they wanted to avoid getting in the car with the men. Davis and Rosenbaum did not have any money in their purses, so Davis told the men she would get money from the ATM if they would let them leave. Davis and Rosenbaum got in Rosenbaum's car with the men after the gun was again pointed in their faces. Davis said that she was afraid the men would shoot them if they did not get in the vehicle. The men, with the shorter man driving Rosenbaum's car, drove to a bank where Davis handed the taller

served over five years in custody for each. On January 10, 2012, Fox was on a suspended sentence and probation for these prior violent felonies.

3

man, who was sitting with her in the back seat, her debit card and her PIN number. The taller man then handed the other man the gun, while he got out of the car to use the ATM. He was unsuccessful in withdrawing money, so he went back to get Davis out of the car too. Davis was able to withdraw $500, which was the maximum she could withdraw from the ATM per day. The bank's surveillance video captured images as the withdrawal occurred. Davis further testified that "[t]he guy in the back seat with me was the one running the show." After Davis withdrew the money, the two men took the money, and they stood outside of the car talking to one another while Davis and Rosenbaum were in the car. Davis said, "I looked down. [Rosenbaum] said something to me, and when I looked back, they were gone." In addition to the $500, the men also took Davis's cell phone and keys. Davis and Rosenbaum walked to a nearby gas station, where they were able to use another person's cell phone to call the police.

¶4. Rosenbaum also testified and corroborated much of Davis's testimony. She added that when the women refused to get into the car with the men, the taller man with the gun, "racked that gun and put it in my face and told me B----, get in the car or I'll shoot you." And it was only at that point that the women agreed to get into the car. Additionally, both Rosenbaum and Davis identified a gun as one that looked like the one the taller man was holding at the time of crimes. Neither could definitively say it was the same. Rosenbaum also testified that after Davis gave them $500 from the ATM, the men talked and then told the women they could leave, which they did because the men still had the keys to the car. According to her testimony, both men were wearing ski masks with the hoodies pulled tight around their faces, and she was unable to see their faces. The taller man with the gun was

4

wearing a dark-colored ski mask, and the other man was wearing a tan-colored ski mask.

¶5.     Jones testified next for the State.  According to his testimony, he and Fox were in the Family Dollar store parking lot a week later, on the evening of  January 17, 2012, when Officer Patrick Gale of the Meridian Police Department, who testified to these events later at trial, pulled in the parking lot to talk with them.  Officer Gale testified that when he pulled in to the parking lot, one of the men, later identified as Fox, dropped something to the ground.  Officer Gale frisked Jones and Fox, and he discovered a gun in Fox's coat pocket.  At that point, both Jones and Fox ran from Officer Gale.  Jones was apprehended, but Fox managed to escape.  Fox was later apprehended by officers at an address given to them by Jones.  Fox was the current boyfriend of Jones's girlfriend's daughter, whom Jones often referred to as his stepdaughter.  Officers also questioned Jones about the incident that occurred on January 10, 2012, and Jones admitted that he and Fox were the ones responsible for the crimes.  His testimony regarding the events that night were that he and Fox were walking when Fox saw Davis and Rosenbaum.  Fox told Jones, "there [are] two ladies over there, I got to get them."  They put on the ski masks and approached the women.  Jones testified that Fox had the gun and immediately told the women to get into the car, calling one of them a "B----."  Jones corroborated Davis's and Rosenbaum's testimony that they were taken to an ATM where Fox got out of the vehicle to get money from the ATM, but was unable to do so without Davis's assistance.  Jones testified that once Davis got the money from the ATM, Fox took the money and Davis's cell phone.  Jones also positively identified the gun Officer Gale recovered from Fox as the gun that was used on the night of January 10, 2012, for the armed robbery, armed carjacking, and kidnappings.

5

¶6. Jones also informed the jury that his testimony was the truth and was consistent with the version of events he told police officers, but he was offered a deal from the State if he testified against Fox. He explained that he was offered, as part of a plea deal, forty years in the custody of the MDOC, with twenty years suspended. He believed he would serve twenty years with the first ten being served day-for-day, and then he believed he would be eligible for earned-time release on the other half. Additionally, he would be placed on five years of probation. On cross-examination, Jones acknowledged that he was a previously convicted felon and would receive life sentences if he went to trial and was convicted of any of the charges stemming from the crimes of January 10, 2012. He further acknowledged that part of his plea deal required that he testify truthfully and consistently with his previous statements or he would lose his plea deal. However, he denied that this was the reason he testified the way he did. Jones was also cross-examined on letters purportedly written by him while he was in jail; however, he denied ever writing the letters.

¶7. On redirect examination by the State, Jones was asked why Fox was the first name that came to his head when he was being interrogated by the police. Jones responded: "Because when we got arrested, Detective Manning [(sic)] had brung [(sic)] his name up. Detective Manning said he [(Fox)] was on papers for two armed robbery charges." Fox immediately requested a bench conference, following which the jury was excused to the jury room. Fox moved for a mistrial based upon Jones's statement that Fox was "on papers for two armed robbery charges," as it violated the judge's order on the motion in limine not to make any reference to Fox's prior or pending felony charges. The circuit court admonished Jones to refrain from any reference to Fox's prior bad acts. The circuit court further noted

6

that it did not believe the testimony was intentional on the part of the State or Jones, and that Jones "felt like [he] was being responsive. . . . I don't think the jury thought anything about it, given the tone of voice that was spoken." Additionally, in overruling the motion for a mistrial, the circuit court said: "I don't think it was prejudicial to the point where a mistrial is required. However, . . . I will admonish the jury to disregard any reference to any revocation or any other . . . papers . . . for two armed robberies." He also gave Fox the option to decline giving the jury the instruction to disregard if he felt that it would emphasize it further, which Fox refused. The circuit court directed the jury to "totally disregard any reference to 'papers' as it refers to [Fox]." The jury was polled and unanimously affirmed that they could disregard the statement.

¶8. As noted above, Officer Gale also testified for the State. He testified that he received a call from police dispatch to investigate two suspicious males in the parking lot of the Family Dollar store on Highway 45. According to him, when he approached the men in the parking lot on January 17, 2012, he saw Fox drop something. This item was later recovered by Officer Gale, and it was a ski mask and a "doo-rag." The 9mm Smith and Wesson gun Officer Gale recovered from Fox's coat pocket was introduced and entered into evidence during his testimony. Following Officer Gale's testimony, the State rested its case-in-chief, and Fox moved for a directed verdict, specifically as to the armed-carjacking charge. The circuit court overruled Fox's motion for a directed verdict.

¶9. Fox called his first witness: August Fox, his sister. August testified that on January 10, 2012, she drove Fox to Meridian for him to meet his girlfriend; she was with him the entire day at their mother's house; and she also drove him home that same night. When

7

pressed by the State on cross-examination as to why she would be able to remember that day so clearly as opposed to other days, August stated she remembered that she was off work that day, spending time with her children, and "whatever me and my children do, I remember those days." The State then asked when her next day off after January 10, 2012, was. August responded it was probably January 15, 2012, but it was just a guess.

¶10. Fox called several other witnesses, all fellow inmates. Elton Fairley testified that he was in an adjoining zone to Jones and overheard Jones talking to Kenneth Jordan through a steel door separating the zones. Fairley testified he overheard Jones tell Jordan that he committed the crimes with someone named Wayne. Fairley also testified that he saw a letter Jones passed to Jordan through the side of the door that Jones was going to send an attorney. However, Fairley further explained that he could not see through the door to know it was Jones that passed the letter, but he could recognize his voice. Jacoby Pickett testified next. He stated he did not know Fox, even though they were in the same zone in the jail, but he knew Jones from outside of jail, and they would talk through the door separating the zones. According to Pickett, Jones told him he committed a crime that he also blamed on Fox, and Jones was planning on writing a letter to the State informing it that Fox was not involved. Next, Fox called Demarkeio Pritchett. Pritchett testified that he knew Fox and Jones, and that he was in the same zone as Fox. Pritchett said that Jones told him Fox was not with him at the time of the crimes and was not involved. Pritchett also testified that Jones showed him a letter he had written to recant his statement that Fox was involved. Pritchett never personally read any letter Jones sent through the door. On cross-examination, Pritchett testified that Jones told him he committed the crimes by himself. Lavon Tucker also

8

testified; however, his testimony was that he and Jones talked about his charges, but Jones never mentioned Fox. Fox voluntarily chose not to testify.

¶11. The State called Jones on rebuttal. Jones testified that he did not know Fairley, Pickett, Pritchett, or Tucker. And he said he never had a conversation with any of them and denied sliding any letter through a door.

¶12. After hearing all the testimony and evidence presented, the jury deliberated and returned a verdict finding Fox guilty on all counts. Prior to his sentencing, Fox filed a motion for a new trial, which the circuit court denied on June 11, 2013. Fox was sentenced on August 8, 2013, as a habitual offender pursuant to section 99-19-83, to life in the custody of the MDOC on each of the four counts. Fox's life sentences were ordered to run concurrently to one another, but consecutively to previously imposed sentences. The sentencing orders were filed on August 9, 2013. Fox filed his notice of appeal on August 13, 2013, and the record was designated. Then, on August 29, 2013, Fox filed a second motion for a new trial. In it, he claimed that Jones's testimony was instrumental in Fox's conviction. Jones testified at trial that his sentence would be forty years, with twenty suspended, ten years to serve day-for-day, and eligibility for earned-release supervision after that, and Fox claims the sentence Jones actually received would subject Jones to no more than fifteen years of initial incarceration.[3] Further, Fox claimed he was "never notified that [Jones's] offer would change based on how well he testified for the State." According to the motion, Fox

---

[3] Attached to Fox's second motion was a copy of Jones's sworn guilty-plea petition filed on August 15, 2013. In it, Jones offered to plead guilty to armed robbery in an open or blind plea, with the State recommending a maximum, or "cap," of fifteen years to initially serve, but the ultimate sentence would be decided by the circuit court.

was not provided a meaningful opportunity to confront Jones; the State committed discovery violations by failing to inform Fox of Jones's sentencing change; and Fox was denied his right to a fair trial. The circuit court summarily denied Fox's second motion for a new trial on August 29, 2013.

¶13. On appeal, Fox raises two issues:

I.  The [circuit] court erred in [denying Fox's motion for a mistrial after] allowing the [State] to elicit evidence of crimes other than the crimes charged in the indictment.

II.  The [circuit] court erred in denying Fox's motion for a new trial based on the newly[]discovered reduced sentence of his alleged accomplice.

**ANALYSIS**

**I.  ADMISSION OF EVIDENCE OF OTHER BAD ACTS**

¶14. Fox first argues that the circuit court erred in failing to grant a mistrial when, in response to the State's question as to why Fox's name came up during interrogation, Jones testified that the police brought up Fox's name because he was "on papers" for two other crimes. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for [a] mistrial is abuse of discretion." *Gunn v. State*, 56 So. 3d 568, 571 (¶14) (Miss. 2011) (quoting *Caston v. State*, 823 So. 2d 473, 492 (¶54) (Miss. 2002)).

¶15. Prior to trial, the circuit court entered an agreed order granting Fox's motion in limine to exclude references to any of Fox's prior convictions or pending felony charges. The following dialogue took place during the State's redirect of Jones:

STATE:  Now, in response to one of Ms. McNair's questions[,] she said did you implicate or say that Quincy Fox was with you, and that

10

was the first name that came to your head, and you agreed with her?

JONES: Yes, ma'am.

STATE: Why was that the first name that came to your head?

JONES: Because when we got arrested[,] Detective Manning [(sic)] had brung [(sic)] his name up. Detective Manning said he [(Fox)] was on papers for two armed robbery charges.

Immediately, Fox requested a bench conference, the jury was excused, and Fox moved for a mistrial for the violation of the motion in limine ruling. In denying the motion for a mistrial, the circuit court stated:

[W]hat we are dealing with here is somebody [(Jones)] that you have proven quite clear has been totally immersed in the criminal justice system since 1990, and here we are in 2013. . . . I don't believe what I heard was an intentional thing. I think it was something that he felt like was being responsive. . . . I don't think the jury thought anything about it given the tone of voice that was spoken.

I understand the motion; however, I don't think it was prejudicial to the point where a mistrial is required.

The circuit court instructed the lay witness, Jones, to avoid any other mention of Fox's prior convictions or pending felony charges. The circuit court also admonished the jury "to totally disregard any reference to 'papers' as it refers to [Fox]." The jury was polled, and each juror affirmed he or she could disregard the statement.

¶16. As we found in *Hancock v. State*, 964 So. 2d 1167, 1179 (¶27) (Miss. Ct. App. 2007) (quoting *Hobson v. State*, 730 So. 2d 20, 24 (¶10) (Miss. 1998), "[w]here the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs." A "trial judge should declare

11

a mistrial when a procedural error results in substantial and irreparable prejudice to the accused." *Pittman v. State*, 928 So. 2d 244, 249 (¶11) (Miss. Ct. App. 2006) (citing *Gardner v. State*, 792 So. 2d 1000, 1003 (¶5) (Miss. Ct. App. 2001)). "When serious damage does not result, the judge should admonish the jury to disregard the impropriety." *Id.* at (¶12) (citing *Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996)). And "[i]t is presumed that the jury followed the instruction of the trial judge to disregard the remark." *Id.* (citing *Dennis v. State*, 555 So. 2d 679, 682-83 (Miss. 1989)).

¶17. Jones's singular and brief reference to Fox's criminal record was not the result of the State's attempt to elicit evidence excluded by the motion in limine. The circuit court then instructed the jury to disregard the statement, which the jury agreed it could and would do. We do not see that Fox was seriously damaged by the statement, or that some substantial or irreparable prejudice occurred. Our analysis of the record before us provides no evidence that the circuit court abused its discretion in denying Fox's motion for a mistrial.

¶18. This issue is without merit.

## II. DENIAL OF FOX'S SECOND MOTION FOR A NEW TRIAL

¶19. Fox next argues that the circuit court erred in denying his second motion for a new trial based on the alleged change in Jones's sentence from what he testified to at trial. Fox filed his first motion for a new trial on June 10, 2013. The circuit court denied this motion on June 11, 2013. Fox was then sentenced on August 8, 2013, and he filed his notice of appeal on August 13, 2013. Fox did not filed his second motion for a new trial until August 29, 2013, which was after the date he filed his notice of appeal. It is well settled that "the filing of the notice of appeal perfected the appeal and divested the lower court of

jurisdiction." *Estes v. State*, 782 So. 2d 1244, 1248 (¶2) (Miss. Ct. App. 2000) (citing *Martin v. State*, 732 So. 2d 847, 851 (Miss. 1998)). Because the circuit court lacked jurisdiction to consider Fox's second motion for a new trial, we also lack jurisdiction to consider the motion.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF ONE COUNT OF ARMED CARJACKING, TWO COUNTS OF KIDNAPPING, AND ONE COUNT OF ARMED ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT ON EACH COUNT, WITH ALL SENTENCES TO RUN CONCURRENTLY TO ONE ANOTHER AND CONSECUTIVELY TO PREVIOUSLY IMPOSED SENTENCES, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**