# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01311-COA

**DERRICK BANKHEAD A/K/A FIZE**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT:          08/24/2018
TRIAL JUDGE:                      HON. LEE SORRELS COLEMAN
COURT FROM WHICH APPEALED:  LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
                                 BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                                 BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:            SCOTT WINSTON COLOM
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 01/21/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Lowndes County jury convicted Derrick Bankhead for the capital murder of Eddie "Meg" Bankhead, and the court sentenced him to life without parole in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Bankhead claims his right to a fair trial was violated when a remark about a prior felony was heard by the jury during a video of Bankhead's interview with law enforcement. Finding no reversible error, we affirm.

## STATEMENT OF FACTS

¶2.     On the night of July 11, 2011, Meg, Bankhead's disabled cousin, was murdered in

the course of a robbery in Columbus, Mississippi. Meg was a local cocaine dealer. Earlier that evening, four individuals, Bankhead, Cortez Williams, Omar Beard, and Michael Ross had been at the "Fuqua Apartments" snorting powder cocaine that Bankhead had purchased from Meg earlier that day. According to Ross's testimony, Bankhead told the group he had tried to rob Meg before but decided against it because a neighbor was sitting outside across the street. Bankhead had also considered robbing Meg of cocaine two weeks prior but changed his mind. However, this night, Bankhead said he wanted to rob Meg because he had seen a large amount of cocaine in Meg's house during his purchases earlier that day. Bankhead considered Meg an "easy lick" because Meg was "crippled"—they could "just hold him down and . . . take his dope."[1]

¶3. Ross testified that Bankhead formulated a plan to call Meg to set up an initial cocaine purchase worth fifteen dollars, using a twenty-dollar bill. During this initial buy, he would scout out the premises. Then, Bankhead would quickly return to purchase an additional five dollars' worth of cocaine. When the door opened, Williams and Beard would run into the house wearing masks and carrying guns, robbing Meg of cocaine and money. Ross would remain in the vehicle and be the getaway driver. To effect the plan, Williams and Beard went to Walmart and stole bandanas to wear during the robbery. According to Ross and Bankhead, there was never a plan to murder Meg.

¶4. After Williams and Beard returned with the bandanas, the group went forward with

---

[1] Meg's girlfriend testified that Meg had difficulty using his hands and legs. Autopsy photographs showed Meg's legs had severe atrophy from lack of use and his hand joints were swollen.

the plan. Bankhead called Meg from his apartment and set up the first cocaine buy. He told the group "everything was straight"; so they all got into Beard's Lincoln, and Ross drove to Meg's house. He parked behind Meg's house to avoid late-night street traffic. Everyone exited the vehicle except Ross. Both Williams and Beard wore the stolen bandanas over their faces and carried nine-millimeter pistols.

¶5.    As planned, Bankhead went alone to Meg's home and purchased fifteen dollars' worth of cocaine. While there, Meg asked Bankhead to get him some "weed." Bankhead agreed and walked away from the house a short distance, but instead of obtaining the "weed," Bankhead returned to Meg's house. Meg's girlfriend, Rennie Gibbs, was on the porch smoking a cigarette while talking on her telephone. Bankhead told Gibbs to tell Meg he wanted to buy five more dollars' worth of cocaine, as was the plan. When Gibbs opened the door, Williams and Beard came from the side of the house brandishing their firearms and ran inside Meg's home while Bankhead ran in the other direction to his niece's house. Bankhead heard two gunshots. He called Ross, who quickly picked him up at the niece's house in the Lincoln. Bankhead got in the passenger seat; Williams and Beard were already in the back seat. Williams stated he thought he "hit" Meg, and Bankhead responded "it wasn't supposed to go down like that." Bankhead, Ross, and Beard all told Williams they hoped he had not shot Meg. Upon returning to the apartments, Beard left while the others snorted the cocaine. Later, Bankhead told law enforcement that Williams said he shot Meg because Meg reached for his gun during the robbery.

¶6.    At Meg's house, Gibbs ran out the back door and called the police, who soon arrived.

3

Robert Fowler, one of Meg's friends, was at the house when the shooting occurred and attempted to help Meg. First responders took Meg to the hospital where he died as a result of the gunshot. The police recovered two nine-millimeter shell casings from the scene.

¶7. A few days after the incident, Bankhead voluntarily turned himself in at the Columbus police station. He waived his *Miranda*[2] rights and proceeded with an interview before Officer Selvain McQueen and another officer to "clear his name." Initially, Bankhead denied involvement in the incident, claiming he was coincidentally buying drugs from Meg when the robbery occurred, and he did not know the two gunmen. However, near the end of his two-hour interview, Bankhead finally admitted to planning the robbery with the other three individuals. Officer McQueen took a written statement from Bankhead that was also entered into evidence at trial. Bankhead, Williams, Beard, and Ross were all arrested and later separately charged with capital murder.[3]

¶8. At Bankhead's August 2018 trial,[4] Ross, Gibbs, Fowler, and Officer McQueen, among others, testified for the State, while the defense rested without calling any witnesses.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Williams and Beard were convicted of murder and manslaughter respectively and are serving twenty years in the custody of the MDOC. Ross testified for the State at Bankhead's trial, admitting that although no deal had been made, he hoped his testimony would be taken into consideration during his own prosecution. Currently, Ross is not incarcerated.

[4] This was Bankhead's third trial on the charge. He was found guilty at his first trial in 2016, but the verdict was set aside when it was later discovered that the lead prosecutor in the trial, who was formerly a defense attorney, had represented Bankhead at his preliminary hearing in 2011. While no wrongdoing was found on the part of the prosecutor, Bankhead was granted a new trial. The second trial in 2017 resulted in a mistrial because of a hung jury.

4

Ross, the State's lead witness, corroborated Bankhead's statement about the plan and subsequent robbery and murder of Meg, although he admitted that his prior four statements to law enforcement, which were inconsistent, were all false.

¶9. During Officer McQueen's examination, a copy of Bankhead's video-recorded interview was entered into evidence and played before the jury. Copies of its transcription were also given to the jury. Toward the end of the video, Bankhead was heard saying he was a "convicted felon" as he was lamenting his current situation before Officer McQueen. Bankhead did not mention, however, the nature of his felony (four counts of selling cocaine in 2009).[5]

¶10. Defense counsel did not object immediately. The video continued to play until its conclusion, and the State completed its examination of Officer McQueen. Defense counsel requested a five minute recess, but instead, the trial judge dismissed the jury for lunch. Defense counsel next requested five minutes to confer with Bankhead, after which he moved for a mistrial. He argued that the State had agreed to "skip over" the portion of the video where Bankhead states he is a prior felon but did not.[6] Counsel argued that in attempting to "skip over" the remark, it was accidentally played twice (although the prosecutor said he only heard it played once). Because of this error, Bankhead's counsel argued the defendant was unable to receive a fair trial.

---

[5] Right before this remark, Bankhead also mentioned other "bad acts" to Officer McQueen: "aint gon lie to ya, I hit licks every day" (i.e., rob individuals). However, the admission of this remark was not raised as error by Bankhead on appeal.

[6] In the prior trials the remark had been successfully "skipped over."

¶11.    The State responded that even though that portion of the interview was inadvertently played, the transcript of the interview provided to the jury was properly redacted.  The State also noted that throughout the interview, Bankhead admitted to other felonious behavior such as "hitting licks," thus there could be no prejudice by this remark.

¶12.    The trial judge carefully considered the issue, initially telling counsel that he was going to dismiss the jury for the remainder of the day so they could research the matter.  Instead, after lunch the judge decided that because there was no deliberate misconduct by the State and the court's initial instructions to the jury had already said to disregard any evidence stricken from the record, he would deny the motion for a mistrial, give a curative instruction, and poll the jurors on their ability to follow the instruction and disregard the remark.  Defense counsel objected to a curative jury instruction, stating it would reemphasize the admissions.  The trial judge then proceeded to draft an instruction, attempting not to emphasize the conviction.  He ultimately decided upon the following language over the objection of defense counsel:

> The Court instructs the Jury that there has been evidence of a prior conviction of the Defendant.  The Court instructs the Jury that such evidence has been stricken by the Court from the record and may not be considered by you in reaching your verdict in this case.  You are instructed to totally disregard this evidence, which is of the prior conviction, and to put it totally out of your minds. You cannot and must not consider this evidence in any way regarding whether or not the Defendant is guilty or not guilty of the charge for which he is presently on trial.

The jury was never informed of the nature of Bankhead's conviction. The trial judge polled each juror on his or her ability to follow the instruction, and each agreed to disregard Bankhead's remark that he was a prior felon.  After both parties rested, another of the

6

court's jury instructions (C-1) again told the jury, among other matters, "to disregard all evidence which was excluded by the Court from consideration during the course of the trial." After deliberations, the jury found Bankhead guilty of capital murder.

## ANALYSIS

¶13. Bankhead raises two related issues: whether the trial court violated his right to a fair trial by allowing the jury to hear evidence of a prior crime via his police interview, and by granting a curative jury instruction to disregard the improper evidence that he claims emphasized that evidence.

¶14. Bankhead argues that it was reversible error to allow the jury to hear that he was a "convicted felon" during the video recording of his interview to police on July 14, 2011. The State responds that the issue is procedurally barred because the objection and motion for a mistrial were not contemporaneous. Alternatively, the State claims the issue is without merit due to the grant of the curative jury instruction and juror polling.

### I.     Procedural Bar

¶15. The State claims the issue is procedurally barred because Bankhead's counsel did not contemporaneously object to the error at the time the video recording was played. Instead, the video ended and Officer McQueen's examination was completed. Then, the jury withdrew, and defense counsel conferred with Bankhead, after which he objected and moved for a mistrial.

¶16. Failure to make a contemporaneous objection generally constitutes waiver of the issue on appeal. *Moody v. State*, 841 So. 2d 1067, 1075 (¶16) (Miss. 2003). While the defense's

7

objection could have been more prompt, we decline to find the issue procedurally barred because Bankhead was not expecting the issue to arise; the State had agreed to "skip over" that portion of the recording, and the statement was not included in the trial transcript being followed.

## II.     Evidence of a Prior Crime

¶17.    Bankhead claims his right to a fair trial was violated because the jury inadvertently heard evidence of a prior crime. Bankhead argues the trial court improperly found the prior crime (sale of cocaine) showed intent and motive towards Bankhead's current charge of capital murder during a robbery for cocaine. He also argues the trial court's curative jury instruction further highlighted the improper evidence.

¶18.    Bankhead bases his argument on Rule 404(b) of the Mississippi Rules of Evidence, which provides: "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

¶19.    However, the trial court did not "admit" Bankhead's conviction under Rule 404(b); Bankhead merely stated he was a prior felon, and the nature of the crime was never revealed to the jury. Initially, the trial judge did analyze the matter under the exceptions of Rule 404(b)(2), finding the prior crime and misconduct were highly probative of motive. The trial judge then suggested a curative jury instruction with language from Rule 404(b)(2).

However, the trial judge, sensitive to the possible prejudice of Bankhead's remark, ultimately decided the better way to correct the mistake was to draft the jury instruction to de-emphasize the remark and mention only "a prior conviction" without specifics, eliminating the Rule 404(b) language. Further, the nature of the felony was not revealed. The jury was instructed that any evidence of a prior conviction was stricken from the record and should not be considered.

¶20.    The State addressed the issue from the perspective of the denial of the motion for a mistrial, which is the remedy the defense requested instead of a curative jury instruction. An abuse-of-discretion standard is used "to determine whether a trial judge erred in denying a request for a mistrial." *Sharkey v. State*, 265 So. 3d 151, 155 (¶14) (Miss. 2019). A mistrial is only declared "when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Id.*

¶21.    In situations "[w]here the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs." *Hancock v. State*, 964 So. 2d 1167, 1179 (¶27) (Miss. Ct. App. 2007) (quoting *Hobson v. State*, 730 So. 2d 20, 24 (¶10) (Miss. 1998)). The trial judge "is in the best position to determine if a remark is truly prejudicial" and has "the discretion to determine whether [an] objectionable comment is so prejudicial that a mistrial should be declared." *Reynolds v. State*, 585 So. 2d 753, 755 (Miss. 1991); *Hampton v. State*, 910 So. 2d 651, 655 (¶9) (Miss. Ct. App. 2005). "When serious damage does not result, the judge should admonish the jury to disregard the impropriety." *Pittman v. State*, 928 So. 2d 244,

249 (¶12) (Miss. Ct. App. 2006) (citing *Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996)). It is presumed the jury follows the trial court's instructions. *Puckett v. State*, 737 So. 2d 322, 347 (¶72) (Miss. 1999).

¶22.    Mississippi courts have repeatedly declined to reverse the denial of a motion for a mistrial in cases where prior crimes or convictions were inadvertently brought before the jury. In *Haymer v. State*, 613 So. 2d 837, 839 (Miss. 1993), a police officer testified at trial that the defendant was a "convicted felon." The trial court admonished the jury to disregard the statement and polled each juror regarding compliance. *Id.* at 840. The Mississippi Supreme Court found no error in the trial court's denial of the defendant's motion for a mistrial. *Id.* Similarly, in *Fox v. State*, 151 So. 3d 226, 229 (¶7) (Miss. Ct. App. 2014), a State's witness testified, in violation of a motion in limine, that the defendant had two armed robbery charges. The defense immediately moved for a mistrial. *Id.* The trial court admonished the jury to "totally disregard" the reference to prior crimes and polled the jurors as to whether they could disregard the statement. *Id.* This Court found the defendant was not "seriously damaged by the statement" and no "substantial or irreparable prejudice occurred." *Id.* at 232 (¶17). Finally, in *Moore v. State*, 64 So. 3d 542, 546 (¶14) (Miss. Ct. App. 2011), a police officer testified that the defendant told him he had been in trouble before and did not want to return to prison. Defense counsel promptly objected, requested a jury instruction to disregard the statement, and moved for a mistrial. *Id.* This Court found the trial judge properly granted a jury instruction and denied the motion for a mistrial. *Id.* at (¶17).

10

¶23. Here, the trial court did not abuse its discretion in denying the motion for a mistrial. There was no prosecutorial misconduct—playing that portion of the video was a mistake, and the remark had been properly redacted from the transcript given to the jury. The jury was instructed to disregard the statement and polled. There was no evidence of substantial or irreparable prejudice to Bankhead by his remark that he was a prior felon as he freely admitted to "hit[ting] licks every day" and reluctantly admitted to buying drugs.

¶24. Finally, Bankhead's argument that the curative jury instruction further highlighted the improper evidence is without merit as well. The trial court stated it was "acutely aware of the fact that sometimes when a cautionary instruction is given, it only creates further attention to that problem." Here, the "curative" instruction twice mentioned Bankhead's prior conviction. While the instruction could have been better drafted, the trial judge deemed it the best course of action to correct any prejudice that might have arisen from the video statement. The procedure of a curative jury instruction is well accepted, as we discussed in *Haymer*, *Fox*, and *Moore*. Further, as discussed in *Shoemaker v. State*, 502 So. 2d 1193, 1195 (Miss. 1987), we are cognizant that the trial judge could be put in a "no-win situation" if a curative jury instruction is found improper and nothing short of reversal and a new trial would undo the improper remarks made at trial. While a curative jury instruction can draw the jury's attention to the improper remark, if a trial judge sustains objections to improper evidence without comment or correction, that action can result in reversal on appeal because of the presumption of prejudice. *Id.* We cannot say the trial court's remedy resulted in Bankhead's receiving an unfair trial.

11

¶25. Accordingly, Bankhead's conviction and sentence for capital murder is affirmed.

¶26. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., AND TINDELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; TINDELL, J., JOINS IN PART.**

**McCARTY, J., DISSENTING:**

¶27. Accidentally playing the tape where the defendant admitted he was a convicted felon was not an error, but the way the trial court dealt with it was error. The trial court gave a curative instruction over the objection of defense counsel. This on its face violates our Rules of Evidence and warrants reversal.

¶28. Mississippi Rule of Evidence 105 states that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, *unless expressly waived or rebutted*, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction *if requested*." (Emphasis added). As a result, built into this process is the guarantee that any limiting instruction will be shaped by the parties, just as with any other jury instruction, because "instructions are the advocate's last opportunity to cast legal issues in a light most favorable to his or her client," so long as they are based upon the law and evidence of the case. 2 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 20:1, at 40 (2019).

¶29. Further built into the rule is language that recognizes the defense may decline as a matter of trial strategy to have any instruction given. This recognition preserves counsel's

12

wide range of possible trial strategies because our courts have "recognized on a number of occasions that the defendant may not want such an instruction because it may actually focus the jury's attention on the potentially prejudicial testimony." *Curry v. State*, 202 So. 3d 294, 299 (¶16) (Miss. Ct. App. 2016) (internal quotation marks omitted).

¶30.    As the Supreme Court has explained, "[j]ury instructions that reference prior arrests and convictions may be counterproductive to the defendant." *Tate v. State*, 912 So. 2d 919, 928 (¶28) (Miss. 2005). "While serving to limit the jury's consideration of the prior wrongs, such instructions also remind and emphasize to the jury that the defendant committed prior bad acts." *Id.* The Court was clear that "[w]hether to request such an instruction is a matter of trial strategy in *the exclusive province of the defendant*, in consultation with his or her attorney." *Id.* (emphasis added). Rule 105 recognizes and institutionalizes this longstanding precedent.

¶31.    Instead of following the Rule or sturdy precedent, the trial court blazed ahead with a limiting instruction that the defense counsel rejected. The trial court also took it upon itself to craft the instruction—and as the State set out in its brief, this process faltered from the start because "[b]oth the State and the defense had objections to different instructions that were considered by the trial court." Defense counsel was concerned that any further instruction was "going to further prejudice my client," especially since it highlighted that Bankhead's previous conviction was for selling drugs. The State was concerned that the limiting instruction might instruct the jury to disregard the entire tape, even the parts that should have been played.

13

¶32. Counsel for the defendant strenuously objected to the trial court's final language of the instruction, and even whether it should be given. Echoing the concerns raised in *Tate* and *Curry* about focusing the jury on prejudicial information, defense counsel argued that "once a bell's rung . . . you can't un-ring that bell," and by giving the cautionary instruction, "that's also going to ring another bell." Nonetheless, the instruction was given.

¶33. As recently set out in a separate opinion, "the best route is for any limiting instruction to be requested by counsel and, just as in any jury instruction, defined by the input of the lawyers and screened through our precedent." *Lawson v. State*, No. 2018-KA-00727-COA, 2019 WL 5168582, at *11 (¶50) (Miss. Ct. App. Oct. 15, 2019) (McCarty, J., specially concurring). "The recent change in the language of Rule 105 does not alter the requirement that a party must first seek the limiter" since "[i]t is not the role of a trial court to soften the blow of admitted evidence." *Id.* (McCarty, J., specially concurring) (internal quotation marks omitted).

¶34. The Rules are in place to bring order to chaos, and the trial court's refusal to respect the trial strategy of the defense violated the face of Rule 105 and applicable precedent. Focusing the jury on this prejudicial evidence warrants reversal. For this reason I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION. TINDELL, J., JOINS THIS OPINION IN PART.**